IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)   C.A. No. 06-463<br>C.V. STARR & CO., INC. and AMERICAN )<br>INTERNATIONAL MARINE AGENCY OF )<br>NEW YORK, INC.,   )<br>)<br>Defendants.   )<br>) | |

**AIG'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
TEMPORARY RESTRAINING ORDER, OR IN THE
<u>ALTERNATIVE, PRELIMINARY INJUNCTION</u>**

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
        Rodger D. Smith II (#3778)
        1201 N. Market Street
        P.O. Box 1347
        Wilmington, DE  19899
        (302) 658-9200
         *Attorneys for Plaintiff*
         *American International Group, Inc.*

OF COUNSEL:

Jeffrey A. Conciatori
Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010-1601
(212) 849-7000

August 8, 2006

TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | II |
| INTRODUCTION | 1 |
| NATURE AND STAGE OF PROCEEDINGS | 2 |
| STATEMENT OF FACTS | 2 |
|     A. AIG's Business | 2 |
|     B. The American International Trademarks | 3 |
|     C. AIG And The Marine Agency Operated In A Principal-Agent Relationship | 6 |
|     D. The Termination Of The Marine Agency And The Agreement Between The Parties | 6 |
|     E. False Advertising And Confusion In The Marketplace | 9 |
|     F. The Marine Agency's Agreement To Change Its Name | 10 |
| ARGUMENT | 11 |
| I. DEFENDANTS SHOULD BE ENJOINED FROM FURTHER INFRINGING AIG'S TRADEMARKS | 11 |
|     A. AIG Has A Reasonable Likelihood Of Success | 12 |
|     B. The Irreparable Harm To AIG Outweighs Any Possible Harm To Defendants | 13 |
|     C. The Public Interest Favors The Issuance Of Injunctive Relief | 14 |
| CONCLUSION | 16 |

Case 1:06-cv-00463-SLR   Document 8   Filed 08/08/2006   Page 3 of 20

ii.

TABLE OF CITATIONS

    Page(s)

Cases

*Cuyahoga Equip. Corp. v. Publicker Indus. Inc.*,
    980 F.2d 110 (2d Cir. 1992)      15

*Equal Employment Opportunity Comm'n v. University of Pennsylvania*,
    850 F.2d 969 (3d Cir. 1988)      15

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
    30 F.3d 466 (3d Cir. 1994)      12

*Johnson & Johnson Orthopaedics, Inc. v. Minnesota Mining Mfg. Co.*,
    715 F. Supp. 110 (D. Del. 1989)      11

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)      12, 14

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*,
    290 F.3d 578 (3d Cir. 2002)      14

*Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*,
    143 F.3d 800 (3d Cir. 1998)      12

*Rockland Mortgage Corp. v. Shareholders Funding, Inc.*,
    835 F. Supp. 182 (D. Del. 1993)      15

*S & R Corp. v. Jiffy Lube Int'l, Inc.*,
    968 F.2d 371 (3d Cir. 1992)      12

*Tootsie Roll Indus., Inc. v. Sathers, Inc.*,
    666 F. Supp. 655 (D. Del. 1987)      11, 13

Statutes

Fed. R. Civ. P. 65      11

INTRODUCTION

Plaintiff, American International Group, Inc. ("AIG"), moves for a temporary restraining order, or in the alternative, a preliminary injunction ordering defendants, C.V. Starr & Co., Inc. ("Starr") and American International Marine Agency of New York, Inc. ("the Marine Agency") (collectively, "defendants") to cease their infringing use of the designation AMERICAN INTERNATIONAL MARINE AGENCY, the marks AMERICAN INTERNATIONAL, AI, AIMA, or any colorable imitations thereof, or anything confusingly similar thereto ("the AMERICAN INTERNATIONAL marks").

After decades of serving as a managing general agent to and doing business solely with certain insurance company subsidiaries of AIG, the Marine Agency's relationship with AIG was terminated in June 2006. Notwithstanding that it has no right or interest in the AMERICAN INTERNATIONAL marks, subsequent to termination of its business relationship with AIG, the Marine Agency refused to cease using AIG's world famous trademarks, and has continued to use them actively and openly in marketing and selling insurance products for one of AIG's direct competitors. AIG was forced to commence this litigation to remedy the situation.

In response to AIG's filing suit here, defendants readily conceded infringement of AIG's trademarks, stating repeatedly that they intend to change the name of the Marine Agency to avoid further trademark infringement. Defendants have refused, however, to enter into a legally binding contract specifying how and when they will cease infringing AIG's American International marks. Instead, notwithstanding their prior refusals to cease using the marks, defendants ask AIG to rely on their "informal commitments" concerning the planned name change. AIG should not be required to accept "informal commitments," while defendants continue to use AIG's trademarks in representing AIG's direct competitor.

Given AIG's clear likelihood of success on its trademark infringement claims, the irreparable harm that it will suffer as a result of defendants' trademark infringement, and the public interest in avoiding confusion over the ownership of trademarks, the Court should issue a temporary restraining order or preliminary injunction ordering defendants to cease infringing AIG's trademarks.

## NATURE AND STAGE OF PROCEEDINGS

AIG filed this action on July 28, 2006, alleging trademark infringement, false designation of origin and related claims against C.V. Starr and its wholly owned subsidiary, the Marine Agency, to enjoin the Marine Agency's continued unauthorized, deceptive and unlawful use of the designation AMERICAN INTERNATIONAL MARINE AGENCY, the abbreviation AIMA, and any other designation that trades upon the goodwill of AIG's federally registered and world famous marks (D.I. 1).  Defendants were served with copies of the Complaint on July 31, 2006 (D.I. 5, 6).

## STATEMENT OF FACTS

A.     AIG's Business

AIG is the world's leading international insurance and financial services organization, with operations in approximately 130 countries and jurisdictions throughout the world (Mucerino Decl., ¶ 3).  AIG's member companies serve commercial, institutional, and individual customers through the most extensive worldwide insurance network of any insurer (*id.*).  Through its member companies, AIG is the leading underwriter and provider of insurance in the United States (*id.*).

AIG's history can be traced back to 1919 when a young entrepreneur, Cornelius Vander Starr ("Mr. Starr"), opened a small insurance agency in Shanghai called American

3.

Asiatic Underwriters, offering fire and marine coverage initially (Mucerino Decl., ¶ 4). Within ten years, the company had expanded to include offices in China, Hong Kong, Indochina, Jakarta, Kuala Lumpur, and the Philippines (*id.*).

In 1926, using the name and trademark American International Underwriters Corporation ("AIUC"), AIG's predecessor-in-interest, AIUC, opened an office in New York to produce and write insurance for represented companies on American risks outside the United States (Mucerino Decl., ¶ 5). In the years that followed, AIUC's business grew, as did the family of related "American International" branded companies (*id.*).

American International Group, Inc. was formed in 1967 to hold the capital stock of certain of the insurance companies in the corporate family created by Mr. Starr (Mucerino Decl., ¶ 6). During the ensuing years, AIG continued to acquire interests in additional insurance and other companies, expanding its operations and brand recognition. Today, AIG owns and operates 33 companies and divisions with offices in 23 states and territories doing business under the AMERICAN INTERNATIONAL marks (*id.*, ¶ 3).

B.     The American International Trademarks

Since 1926, AIG and its predecessors-in-interest have continuously used the AMERICAN INTERNATIONAL marks in connection with their business of underwriting insurance, both in the United States and throughout the world. AIG is currently the registered owner of thirteen federal trademark registrations for AMERICAN INTERNATIONAL or close variations thereof, including registrations for AIMA and MARINE INSURANCE AIMA, which were registered in 1945 to a predecessor of AIG and subsequently, by duly recorded assignment, transferred to AIG (Mucerino Decl., ¶ 7).

4.

AIG is the owner of the following United States trademark registrations:

| Registration No. | Mark | Class(es) | Date of First Use |
|---|---|---|---|
| 1040729 | MARINE INSURANCE AIMA | 36 | 1945 |
| 1040730 | AIMA | 36 | 1945 |
| 1023912 | AMERICAN INTERNATIONAL | 36 | 1926 |
| 1661062 | AMERICAN INTERNATIONAL COMPANIES | 36 | 1967 |
| 1190934 | AMERICAN INTERNATIONAL | 36 | 1970 |
| 1151230 | AMERICAN INTERNATIONAL | 36 | 1926 |
| 2168144 | AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY | 36 | 9/26/1996 |
| 2037682 | AMERICAN INTERNATIONAL PACIFIC INSURANCE COMPANY | 36 | 6/1/1995 |
| 1840829 | AMERICAN INTERNATIONAL ASSISTANCE SERVICES, INC. | 35, 36, 39, 42 | 11/20/1978 |
| 1872028 | AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY | 36 | 9/25/1992 |
| 2376437 | AMERICAN INTERNATIONAL GROUP | 36 | 1968 |
| 2398912 | AMERICAN INTERNATIONAL COMPANIES | 36 | 1967 |
| 2487923 | AMERICAN INTERNATIONAL GROUP | 36 | 5/1/2000 |

5.

The foregoing registrations are valid and subsisting, unrevoked and uncancelled, in full force and effect. True and correct copies of these federal trademark registrations are attached to the Complaint (D.I. 1) in this action as Exhibit A.

AIG spends millions of dollars annually to advertise and promote the AMERICAN INTERNATIONAL marks, and the products and services offered by its various member companies in connection with these marks, through various media, including television, radio, newspaper, and magazines, among others (Mucerino Decl., ¶ 8). In 2005, AIG spent in excess of $30 million on advertisements containing the AMERICAN INTERNATIONAL marks (*id.*). In addition, AIG and its member companies have advertised the AMERICAN INTERNATIONAL marks through direct mailings, brochures distributed at trade shows, point-of-purchase display material, signage, and banners (*id.*).

AIG also promotes the AMERICAN INTERNATIONAL marks on various websites, including aig.com, aigmarine.com, aigbank.com, aigdirect.com, aiggig.com, aigag.com, aiu.com, aigfp.com, aig4auto.com, aigaandh.com, aigamericanhome.com, aigaviation.com, aigconsultants.com, aigenvironmental.com, aigfinancialadvisors.com, aigidtheft.com, aigpcg.com, aigriskmgmt.com, aigsmallbusiness.com, and aigworldsource.com (Mucerino Decl., ¶ 9). AIG's primary website (www.aig.com) receives approximately 3.4 million hits per year (*id.*). Since 2004, there has been an average of 200,000 visits per month to aig.com (*id.*).

As a result of AIG's continuous and extensive advertising and promotional efforts, the AMERICAN INTERNATIONAL marks are among the best known brands -- if not the best known brands -- in the insurance industry and enjoy substantial goodwill.

      C.      <u>AIG And The Marine Agency Operated In A Principal-Agent Relationship</u>

The Marine Agency was formed in 1945 to serve as managing agent for the member insurance companies of AIG and its predecessors, and did so throughout its history until the Marine Agency announced within the last several weeks that it had entered into an MGA arrangement with a direct competitor of AIG (Mucerino Decl., ¶ 10). The Marine Agency is currently a wholly-owned subsidiary of C.V. Starr, a privately held corporation presently controlled by Maurice R. Greenberg and certain associates (*id.*).

From at least 1975 until July 25, 2006, the Marine Agency served as a managing general agent ("MGA") to AIG and certain of its member companies (Mucerino Decl., ¶ 10). Having been formed and operated to service the marine business of AIG and its member companies, as their fiduciary and agent, the Marine Agency was authorized to use AMERICAN INTERNATIONAL and AIMA as part of its name only for so long as its agency relationship with the AIG Insurers existed and only in connection with the business of those entities (*id.*, ¶ 11).

The Marine Agency used the AIMA and AMERICAN INTERNATIONAL MARINE AGENCY marks pursuant to an implied license from AIG (Mucerino Decl., ¶ 12). For as long as the Marine Agency remained part of the greater AIG family of companies, functioned as managing general agent to AIG member insurance companies, and was subject to the control and supervision of AIG, it was permitted to use AIG's world famous marks (*id.*).

      D.      <u>The Termination Of The Marine Agency And The Agreement Between The Parties</u>

After learning that the Marine Agency had entered into negotiations to act (for the first time) as MGA for an AIG competitor, AIG instructed the Marine Agency on June 6, 2006,

that it was not authorized to use the AMERICAN INTERNATIONAL or AIMA designations in business dealings other than those undertaken to benefit AIG, and to inform AIG immediately of any potential or actual agreements between the Marine Agency and non-AIG insurers (Mucerino Decl., Ex. A).

On June 8, 2006, the Marine Agency responded that it was not "presently writing as a managing general agent for any other insurer" (Mucerino Decl., Ex. B). On June 9, 2006, AIG repeated its instruction that the Marine Agency immediately inform AIG of any potential or actual agreements between the Marine Agency and non-AIG insurers (*id.*, Ex. C). AIG also requested that the Marine Agency inform AIG how it would continue to perform its fiduciary duties as AIG's agent in light of these potential or actual agreements (*id.*).

On June 12, 2006, the Marine Agency communicated its view that AIG was not entitled to know about the Marine Agency's plans, but assured AIG that if it entered into an agreement with another principal it would promptly notify AIG (Mucerino Decl., Ex. D). At the end of June, AIG and the Marine Agency each delivered to the other written notice that the relationship between them would terminate as of year-end 2006 (Mucerino Decl., ¶ 17). In a June 30, 2006 press release, the Marine Agency announced that it "look[s] forward to serving new underwriters next year" (Mucerino Decl., Ex. E). Based on this press release, along with the Marine Agency's June 8 and June 12 correspondence, AIG reasonably understood the Marine Agency to be representing that it would not begin acting for a competing insurance company prior to the termination of the six-month notice period, during which the Marine Agency would continue to serve as AIG's agent (Mucerino Decl., ¶ 17).

Nevertheless, and without notifying AIG in advance, on July 21, 2006, AIMA announced to the media that it had entered into an agreement with National Liability and Fire

8.

Insurance Company ("National Liability"), a member of the Berkshire Hathaway group of insurance companies -- and a direct competitor of AIG (Mucerino Decl., Ex. F):

> American International Marine Agency, Inc. (AIMA), a wholly owned subsidiary of C.V. Starr & Co., Inc., today announced a new agreement with National Liability and Fire Insurance Company, a member of the Berkshire Hathaway group of insurance companies, which will expand the agency's servicing capabilities. The leading insurance agency for the marine industry, AIMA said that the relationship with National Liability and Fire Insurance Company will allow the agency to immediately offer $100 Million of commercial underwriting capacity to its clients.
>
> "Our new agreement with National Liability and Fire Insurance Company ensures that AIMA will continue to offer the breadth of tailored marine products and services that have made the company an industry leader for more than 60 years," said David French, President, AIMA. "It also reflects our commitment to providing superior coverage and solutions, through the industry's top companies, that meet our clients' needs."

On July 24, 2006, AIG reminded the Marine Agency that it could no longer make lawful use of the AMERICAN INTERNATIONAL or AIMA designations as part of its operating name in connection with any business dealings that are not undertaken solely for the benefit of AIG and its member insurance companies (Mucerino Decl., Ex. G). AIG instructed the Marine Agency to cease and desist immediately any and all advertising, marketing and other operations that involve the use of the names AMERICAN INTERNATIONAL MARINE AGENCY and AIMA in connection with insurance products and services offered by any insurers other than AIG and its subsidiaries, including but not limited to operations on behalf of National Liability (*id.*).

In response to AIG's demands, on July 25, 2006, the Marine Agency indicated that it had no present intention of changing its name and discontinuing its use of the AMERICAN INTERNATIONAL marks (Mucerino Decl., Ex. H). In a separate letter, dated July 25, 2006, the Marine Agency stated that unless AIG rescinded within 24 hours certain

9.

instructions related to the Marine Agency's conduct during the six-month notice period that was articulated in its June 29, 2006 letter, AIMA would consider AIG to be in breach of the agreement between the parties, and that the agreement and the MGA relationship would be deemed terminated (*id.*, Ex. I).

Later that day, AIG responded that it understood that the Marine Agency deemed the Management Agreement to be terminated immediately (Mucerino Decl., Ex. J). In a July 25, 2006 press release, in reliance on the Marine Agency's representations that it considered the agency agreement terminated, AIG announced the end of its agency relationship with the Marine Agency (*id.*, Ex. K).

In a July 27, 2006 letter, the Marine Agency once again reiterated its refusal to cease using the AMERICAN INTERNATIONAL and AIMA names (Mucerino Decl., Ex. L).

### E.   False Advertising And Confusion In The Marketplace

The Marine Agency continues to make prominent and unlawful use of AIG's famous AMERICAN INTERNATIONAL marks in violation of AIG's intellectual property rights. Most prominently, when the Marine Agency announced to the world that, for the first time, it was going into business for a principal other than AIG, it did so using the AMERICAN INTERNATIONAL and AIMA marks (Mucerino Decl., Ex. F). Defendants' website (cvstarrco.com) also prominently features the AMERICAN INTERNATIONAL and AIMA marks to promote the Marine Agency's services on behalf of AIG's competitors (*id.*, Ex. M).

The Marine Agency continues to use the AMERICAN INTERNATIONAL and AIMA marks in connection with marine insurance, impermissibly trading off of the substantial goodwill embodied in the AMERICAN INTERNATIONAL marks and creating confusion in the

marketplace and the false impression that AIMA continues to be affiliated with AIG (Mucerino Decl., ¶ 26).

### F. The Marine Agency's Agreement To Change Its Name

In response to AIG's filing this action, the Marine Agency sent a letter to AIG on July 31, 2006, indicating that it planned to use "its historic and current name only for a reasonable transition period," and that it was "willing to negotiate a reasonable transition period for AIMA" (Carlinsky Decl., Ex. A). In another letter that same day, the Marine Agency stated again that it "plans to continue to use the AIMA name only for a reasonable transition period" (*id.*, Ex. B). The next day, August 1, 2006, the Marine Agency again confirmed its plans to change its name: "AIMA intends to effectuate the name changes as promptly as reasonably possible" (Carlinsky Decl., Ex. C).

In response, AIG asked how defendants planned to handle advertising during the transition period -- "Please confirm that: 1. AIMA will agree not to advertise itself; and 2. AIMA will not use any materials that refer to AIG or suggesting any affiliation" (Carlinsky Decl., Ex. D). AIG also asked defendants for a more concrete agreement concerning the name change, suggesting that they "change the language from 'as promptly as reasonably possible' to something a bit more active, such as 'will take all steps and measures to effect the name change, including the necessary regulatory approves as promptly as possible'" (*id.*).

The Marine Agency did not respond to the question concerning advertising, and rejected out of hand the proposed language concerning the name change (Carlinsky Decl., Ex. E). Instead, the Marine Agency filed a motion in the Southern District of New York to enjoin AIG's prosecution of this action. In its motion papers in New York, the Marine Agency again made clear that it intends to change its name: "[T]he only issue raised by AIG's Delaware

11.

complaint that requires resolution is the 'reasonable time period' by which C.V. Starr must effectuate the name change" (*id.*, Ex. F at 10).

Based on the Marine Agency's repeated representations that it intended to change its name, AIG sent the Marine Agency proposed terms on August 3, 2006, as to how the name change would be effectuated (Carlinsky Decl., ¶ 8). The Marine Agency refused to negotiate those terms, however, stating that it was not willing to enter into "a contract at all" and was willing to give only "informal commitments" (*id.*, Ex. G). On August 6, 2006, the Marine Agency reiterated that it was "not willing to enter into a formal agreement" (*id.*, Ex. H). In particular, the Marine Agency made clear that it was not willing to enter into a written agreement concerning the "cessation of marketing and advertising" (*id.*).

ARGUMENT

I.   DEFENDANTS SHOULD BE ENJOINED FROM FURTHER INFRINGING AIG'S TRADEMARKS

Fed. R. Civ. P. 65 governs the issuance of temporary restraining orders and preliminary injunctions. "Generally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987).[1]

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the

---

[1] The standard for granting a temporary restraining order is the same as for a preliminary injunction, "the difference being solely one of duration of the order." *Johnson & Johnson Orthopaedics, Inc. v. Minnesota Mining Mfg. Co.*, 715 F. Supp. 110, 111 (D. Del. 1989).

12.

public interest favors such relief." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Because AIG is able to satisfy each of these requirements, AIG's motion for a temporary restraining order or preliminary injunction should be granted.

      A.      <u>AIG Has A Reasonable Likelihood Of Success</u>

To demonstrate a likelihood of success in a trademark infringement action, a plaintiff must demonstrate: (1) the marks are valid and legally protectable; (2) plaintiff owns the mark; and (3) defendant's use of the mark to identify goods or services is likely to create confusion about the origin of the goods and services. *See Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994).

There is no dispute that AIG owns the AIMA and AMERICAN INTERNATIONAL trademarks. AIG's thirteen trademark registrations containing the AIMA or AMERICAN INTERNATIONAL are valid, subsisting and in full force and effect. In addition, AIG closely controls the nature and quality of the services rendered under these marks.

Moreover, defendants' continued use of the identical marks after the termination of the agreement and MGA relationship between AIG and the Marine Agency is likely to cause confusion. *See Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) ("This court has held that where the identical mark is used concurrently by unrelated entities, the likelihood of confusion is inevitable."); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("There is no question in this case that Durst and Jiffy Lube are using the same legally protectable trademark, owned by Jiffy Lube, and that their concurrent use is highly likely to cause consumer confusion about Durst's affiliation with the franchise.").

There is no question that defendants are infringing AIG's trademarks. Indeed, defendants have conceded this point -- telling the New York court that "the only issue raised by

AIG's Delaware complaint that requires resolution is the 'reasonable time period' by which C.V. Starr must effectuate the name change" (Carlinsky Decl., Ex. F at 10).

### B. The Irreparable Harm To AIG Outweighs Any Possible Harm To Defendants

Because there is a reasonable likelihood that AIG will succeed on its trademark infringement claims, AIG has established irreparable harm as a matter of law. *See S & R Corp.*, 968 F.2d at 378 ("[T]rademark infringement amounts to irreparable injury as a matter of law.").

Moreover, as the federally registered owner of the AMERICAN INTERNATIONAL marks, including the AIMA designation, AIG will suffer irreparable harm through the loss of control of its world famous marks unless defendants are required to cease using them. *See S & R Corp.*, 968 F.2d at 378 ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."). AIG will also suffer irreparable harm because defendants will be impermissibly trading off of the substantial goodwill associated with the AMERICAN INTERNATIONAL marks, and creating the false impression that defendants remain affiliated with AIG, even while the Marine Agency acts as the agent for AIG's direct competitors. *See S & R Corp.*, 968 F.2d at 378 ("Irreparable injury can also be based on the possibility of confusion."); *Tootsie Roll Indus.*, 666 F. Supp. at 660 ("Irreparable injury is established if there is a likelihood that an appreciable number of customers will be misled or simply confused by the Sathers product.").

Finally, any potential harm to defendants is self-inflicted. Defendants brought any potential harm on themselves by entering into a contractual relationship to act as MGA for National Liability -- one of AIG's direct competitors -- before having taken all the steps necessary to effect the appropriate name changes. The Third Circuit has held repeatedly that "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact

that the defendant brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *see also Kos Pharmaceuticals*, 369 F.3d at 728 ("[W]hen the potential harm to each party is weighed a party 'can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself.'") (quoting *Opticians*, 920 F.2d at 197); *Pappan*, 143 F.3d at 805 ("[A]ny difficulties Pappan now faces were brought on by its own conduct in continuing to use the ROY ROGERS marks despite the termination of the franchise agreements.").

The irreparable harm to AIG resulting from defendants' trademark infringement outweighs defendants' self-inflicted harm.  *See Pappan*, 143 F.3d at 806 ("[A] party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchisor of the mark.").

      C.    The Public Interest Favors The Issuance Of Injunctive Relief

The public interest also weighs in favor of enjoining defendants' continued trademark infringement, as a result of the confusion caused by defendants' concurrent use of the AIG marks.  *See Kos Pharmaceuticals*, 369 F.3d at 730 ("[T]he most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy."); *S & R Corp.*, 968 F.2d at 379 ("Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest."); *Rockland Mortgage Corp. v. Shareholders Funding, Inc.*, 835 F. Supp. 182, 200-01 (D. Del. 1993) ("[D]efendant's use is likely to cause further public confusion.  Injunctive relief is therefore in the public interest.").

\*   \*   \*

15.

Because all four factors favor the issuance of injunctive relief, defendants should be enjoined and restrained from using the designation AMERICAN INTERNATIONAL MARINE AGENCY, the marks AMERICAN INTERNATIONAL, AI, AIMA, or any colorable imitations thereof, or anything confusingly similar thereto.[2]

---

[2] Defendants have filed a motion in the Southern District of New York to enjoin AIG from prosecuting this action based on the "first-filed" rule. Because this action involves distinct issues and one party not present in the New York Action, the first-filed rule does not apply. *See Equal Employment Opportunity Comm'n v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) ("The first-filed rule . . . gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."); *see also Cuyahoga Equip. Corp. v. Publicker Indus. Inc.*, 980 F.2d 110, 116-17 (2d Cir. 1992) (the first-filed rule "usually applies when identical or substantially similar parties and claims are present in both courts."). In the New York action, C.V. Starr and two of its subsidiaries sued AIG over AIG's use and ownership of the STARR EXCESS mark. AIG promptly filed compulsory counterclaims asserting ownership rights to the STARR marks. The Marine Agency is not a party and there is no AMERICAN INTERNATIONAL or AI trademark at issue in the New York action. By contrast, the principal issue in this Court is whether the Marine Agency should be permitted to continue its unauthorized and infringing use of the AMERICAN INTERNATIONAL mark. The use and ownership of the STARR marks is not at issue here.

16.

## CONCLUSION

For the foregoing reasons, defendants should be enjoined and restrained from using the designation AMERICAN INTERNATIONAL MARINE AGENCY, the marks AMERICAN INTERNATIONAL, AI, AIMA, or any colorable imitations thereof, or anything confusingly similar thereto.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  *Attorneys for Plaintiff*
  *American International Group, Inc.*

OF COUNSEL:

Jeffrey A. Conciatori
Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010-1601
(212) 849-7000

August 8, 2006

531703

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were caused to be served on August 8, 2006, upon the following in the manner indicated:

**BY HAND**

Edward P. Welch
Edward B. Micheletti
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
Wilmington, DE  19801

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com