IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMERICAN INTERNATIONAL GROUP, INC.,

Plaintiff,

v.

C.V. STARR & CO., INC. and AMERICAN INTERNATIONAL MARINE AGENCY OF NEW YORK, INC.,

Defendants.

C.A. No. 06-463

**DECLARATION OF MICHAEL B. CARLINSKY**

I, MICHAEL B. CARLINSKY, declare as follows:

1. I am a partner in Quinn Emanuel Urquhart Oliver & Hedges, LLP in New York, New York, and counsel for plaintiff American International Group, Inc. ("AIG"). I make this declaration in support of AIG's request for an order restraining and enjoining defendants from using AMERICAN INTERNATIONAL or AIMA in connection with the marine insurance business.

2. On July 31, 2006, Kenneth Plevan, counsel for defendants C.V. Starr & Co., Inc. and American International Marine Agency of New York, Inc. ("the Marine Agency"), sent a letter to my partner, Jeffrey A. Conciatori, in which Mr. Plevan indicated that the Marine Agency planned to use "its historic and current name only for a reasonable transition period," and that it was "willing to negotiate a reasonable transition period for AIMA." A true and correct copy of that letter from Mr. Plevan is attached hereto as Exhibit A.

3. That same day, July 31, 2006, Mr. Plevan sent another letter to Mr. Conciatori in which he again stated that the Marine Agency "plans to continue to use the

AIMA name only for a reasonable transition period." A true and correct copy of that second July 31, 2006 letter is attached hereto as Exhibit B.

4. On August 1, 2006, I received a letter from Mr. Plevan in which he stated that "AIMA intends to effectuate the name changes as promptly as reasonably possible." A true and correct copy of that August 1, 2006 letter is attached hereto as Exhibit C.

5. In response to Mr. Plevan's August 1 letter, I sent him an email on August 1, 2006, asking how defendants planned to handle advertising during the transition period -- "Please confirm that: 1. AIMA will agree not to advertise itself; and 2. AIMA will not use any materials that refer to AIG or suggesting any affiliation." I also asked whether the Marine Agency would agree to "change the language from 'as promptly as reasonably possible' to something a bit more active, such as 'will take all steps and measures to effect the name change, including the necessary regulatory approves as promptly as possible.'" A true and correct copy of my August 1 email to Mr. Plevan is attached hereto as Exhibit D.

6. Later that evening, I received an email from Mr. Plevan indicating that my proposed language was not acceptable to defendants. A true and correct copy of Mr. Plevan's email is attached hereto as Exhibit E.

7. On August 2, 2006, defendants filed a Memorandum Of Law In Support Of Application To Enjoin AIG From Proceeding In Related Action in the Southern District of New York in support of a motion to enjoin AIG's prosecution of this action. In its Memorandum of Law, defendants stated that "the only issue raised by AIG's Delaware complaint that requires resolution is the 'reasonable time period' by which C.V. Starr must effectuate the name change." A true and correct copy of that Memorandum of Law is attached hereto as Exhibit F.

8. Based on the defendants' repeated representations that it intended to change the Marine Agency's name, I sent a letter to Mr. Plevan on August 3, 2006, setting forth the terms on which AIG would agree to resolve this action. Later that day, I received an email from Mr. Plevan, stating that defendants were not willing to enter into "a contract at all," and were willing to give only "informal commitments." A true and correct copy of Mr. Plevan's August 3, 2006 email is attached hereto as Exhibit G.

9. On August 6, 2006, I received another email from Mr. Plevan, stating that defendants were "not willing to enter into a formal agreement." In particular, defendants made clear they were not willing to enter into a written agreement concerning any of the issues, including "cessation of marketing and advertising." A true and correct copy of Mr. Plevan's August 6, 2006 email is attached hereto as Exhibit H.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York this 8th day of August, 2006.

Michael B. Carlinsky

# EXHIBIT A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK 10036-6522

(212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-3410
DIRECT FAX
917-777-3410
EMAIL ADDRESS
KPLEVAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 31, 2006

By Email

Jeffrey A. Conciatori, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
335 Madison Avenue, 17th Floor
New York, NY 10017

RE: American International Group Inc. v. C. V. Starr & Co., Inc. and American International Marine Agency of New York, Inc. 06 CV 463 (D. Del.)

Dear Jeff:

We refer to your e-mail of Friday evening July 28, 2006, which attached among other documents a letter and a copy of a Complaint apparently filed late that afternoon against C. V. Starr & Co., Inc. ("C. V. Starr") and American International Marine Agency of New York, Inc. ("AIMA") in the United States District Court for the District of Delaware. In response to your question concerning representation, while Skadden, Arps has been authorized by C. V. Starr and AIMA to respond to your e-mail, we have not at this point been retained by the defendants in the Delaware action, and have not been authorized to accept service on their behalf. Skadden, Arps is of course co-counsel to C. V. Starr and the other plaintiffs and counterclaim-defendants (the "C. V. Starr Agencies") in the trademark infringement lawsuit involving AIG currently pending in the Southern District of New York before Judge Baer (06 CV 2157).

We were quite surprised to receive your e-mail and the attachments for two reasons. First, had AIG inquired of us prior to preparing and filing the Delaware Complaint, we would have promptly confirmed that, as with the situation

relating to American International Aviation Association, Inc. ("AIAA"), AIMA plans to continue use of its historic and current name only for a reasonable transition period. (It would not have been difficult to reach me to raise this issue, as on Thursday I was in your offices defending a deposition in the New York lawsuit from 9:00 A.M. until 6:00 P.M.) As with AIAA, we are willing to negotiate a reasonable transition period for AIMA. We note that the transition period provided for in the Management Agreement is six months. We will discuss this issue with our client, and hope to be in a position to have substantive discussions on this subject later today.

Second, it is readily apparent that AIG's filing of this new lawsuit in federal court in Delaware is an inappropriate attempt at forum shopping. In this connection, as AIG is well aware, and, indeed, as AIG alleges in its Delaware Complaint, New York is the principal place of business of all of the parties. Each is headquartered in New York, with its executive offices, senior executives familiar with the facts, likely witnesses, and relevant documents, all located in New York.

In addition, the issues raised by AIG in its Delaware Complaint are closely related to the issues already being litigated in the New York case. Indeed, AIG's position on "sanctioned" vs. "unauthorized" use of "American International" or "AI" by C. V. Starr and the C. V. Starr Agencies appears both in its Amended Counterclaims in the New York action (see, e.g., ¶¶ 90-95), and on page 20 of its memorandum in opposition to the motion to dismiss those claims. Furthermore, numerous of the factual allegations in the Delaware Complaint are paraphrases of, or even word-for-word identical to, the allegations contained in AIG's Amended Counterclaims in the New York lawsuit. This is particularly true with respect to AIG's factual allegations concerning the parties' relationships, and its contentions that these alleged facts are the key means of determining ownership of trademark rights. (Compare Del. Compl. ¶¶ 31-35 with Amended Counterclaims ¶¶ 63, 64, 66, 67, and 72.)

Finally, Judge Baer is already familiar with the background facts, having already ruled on one preliminary injunction motion and having held a pretrial conference with counsel.

Under these circumstances, we trust that AIG will agree to not serve the Delaware Complaint pending good faith discussions to resolve this dispute. Should AIG not agree to this, C. V. Starr and AIMA reserve their right to file a motion to have the allegations in AIG's Delaware Complaint resolved by Judge Baer.

Sincerely,

Kenneth A. Plevan

# EXHIBIT B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK 10036-6522

(212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-3410
DIRECT FAX
917-777-3410
EMAIL ADDRESS
KPLEVAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 31, 2006

By Email

Jeffrey A. Conciatori, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
335 Madison Avenue, 17th Floor
New York, NY 10017

RE: American International Group Inc. v. C. V. Starr & Co., Inc. and American International Marine Agency of New York, Inc. 06 CV 463 (D. Del.)

Dear Jeff:

We are writing to follow-up on our letter of this morning.

With respect to AIMA's name change, as I confirmed in my letter earlier today, AIMA plans to continue use of the AIMA name only for a reasonable transition period. In this connection, Honora Keane, in-house regulatory counsel, returns to the office tomorrow from vacation and will immediately make the necessary filings with the various state insurance departments of insurance in the states where an AIMA entity is incorporated. We expect these filings will be completed in the next 2-3 days. Based on Honora's recent experience with the name change from AIMA to Starr Aviation and other relevant experience, we believe that these name changes will be approved within 2 ½ - 3 months.

It is only after those approvals have been granted that AIMA can begin to file for name-change-approvals in the 20-25 states in which its New York entity is currently licensed to do business. However, as soon as the approvals specified in the prior paragraph are obtained (i.e. within 2 ½-3 months from now),

AIMA can announce its new name and begin to use new letterhead, business cards, etc. (which, of course, will have been ordered and will be ready for use).

We trust that AIG and its legal and regulatory staff are fully familiar with these state regulatory requirements referred to herein.

You state in your e-mail today that the "circumstances of this transition differ materially from those of the Aviation Agency to which your letter refers, so a far more expeditious timetable is expected, and I suspect, easily attainable." We do not understand to what you have reference.

We look forward to discussing these issues further during our call this afternoon. In addition, our firm has been retained on behalf of the defendants in the Delaware lawsuit. The lawyers in our Wilmington office are Ed Welch and Ed Micheletti, and of course Stephanie and I will be working with them on this matter.

Sincerely,

Kenneth A. Plevan

# EXHIBIT C

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-3410
DIRECT FAX
(917) 777-3410
EMAIL ADDRESS
KPLEVAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

August 1, 2006

**By Email**

Michael B. Carlinsky, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
335 Madison Avenue, 17th Floor
New York, NY 10017

RE: American International Group, Inc. v. C. V. Starr & Co., Inc. and American International Marine Agency of New York, Inc. 06 CV 463 (D. Del.)

Dear Mike:

Following up on our phone conversation this morning and our prior communications yesterday, we are setting forth in more detail the name-change process:

1. In each state in which an AIMA subsidiary is domiciled, AIMA is required to file with the Secretary of State an amended certificate of incorporation reflecting the name change. There are 9 such states.

2. Once the respective Secretary of State approves the amended certificate of incorporation, AIMA must file the amended certificate with the insurance department in the subsidiary's domiciliary state in order to obtain an amended license to conduct business under the changed name.

3. Once approval is obtained from the domiciliary insurance regulator, the new license and amended certificate of incorporation must be filed in each of the states in which AIMA's subsidiaries are authorized to conduct business as a non-resident agency. For some jurisdictions, this requires an initial filing with the secretary of state, and a subsequent filing with the state's insurance regulatory agency. There are 4 "active" AIMA entities, i.e. those in New York, California, Texas, and Illinois, each of which has non-resident licenses. Filings will be required in approximately 26 states. AIMA of New York currently has license applications pending in 13 jurisdictions. These applications will require amendment.

4. The AIMA entities may not conduct business under their new name until the state's insurance regulatory agency approves the name change application.

AIMA intends to effectuate the name changes as promptly as reasonably possible. In exchange for your representation that the Delaware lawsuit will be withdrawn without prejudice, and the claims in the lawsuit not refiled there or anywhere else without at least three business days prior notice to us, AIMA will agree to the following:

1. On or before August 7, 2006, AIMA will file an amended certificate of incorporation in each state in which AIMA and its subsidiaries are domiciled (9 states).

2. Upon AIMA's receipt of each approved certificate of incorporation (which could take 30-60 days), AIMA will immediately file the amended certificate with the appropriate insurance regulatory agency in the domicile state in order to obtain a license to conduct business under the changed name ("Domiciliary Regulatory Approval").

3. Within 10 business days of AIMA's receipt of Domiciliary Regulatory Approval (which could also take 30-60 days), AIMA will file its name change application in each state in which it holds a non-resident insurance license.

4. As soon as all necessary regulatory approvals are obtained from the states in which AIMA conducts substantial business, the name change will be announced and effectuated.

5. We estimate that the new name can be adopted in about 3 months (which was the experience with AIAA). At the close of business on each Tuesday, counsel for C.V. Starr will provide AIG's counsel with an informal written update summarizing the status of the AIMA name change process.

6. Informal efforts (e.g. phone calls to state staffs) will be used to request that the application and review process be expedited.

I trust that we will have your prompt response to this proposed resolution of the dispute reflected in your Delaware lawsuit.

Sincerely,

Ken Plevan

Kenneth A. Plevan

# EXHIBIT D

**Rodger D. Smith**

---

**From:** Plevan, Kenneth [KPLEVAN@skadden.com]
**Sent:** Tuesday, August 01, 2006 7:03 PM
**To:** Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA

I will be checking with my client and get back as soon as I can

---

**From:** Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
**Sent:** Tuesday, August 01, 2006 6:49 PM
**To:** Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA

Ken:

Your letter of this afternoon, which we and our clients are reviewing, does not address the advertising issues we discussed. Please confirm that: 1. AIMA will agree not to advertise itself; and 2. AIMA will not use any materials that refers to AIG or suggests any affiliation.

In looking at your letter, I notice that you ask us to withdraw the suit and give 3 days notice before re-filing. What is the purpose of the notice before re-filing provision ? My concern is that, if we give notice, you might file something elsewhere. In addition to advising why you want a notice provision, please confirm that your clients would not file suit themselves during that period.

Finally, I am wondering whether you would agree to change the language from "as promptly as reasonably possible" to something a bit more active, such as "will take all steps and measures to effect the name change, including the necessary regulatory approvals, as promptly as possible."

Please let us know asap.

---

**From:** Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
**Sent:** Tuesday, August 01, 2006 6:24 PM
**To:** Kamerow, Stephanie; Jeffrey A Conciatori; Michael Carlinsky
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA

Jeff and Mike, given my schedule let me know by email tonight where we stand or let's talk early tomorrow. Thanks

---

**From:** Kamerow, Stephanie
**Sent:** Tuesday, August 01, 2006 5:19 PM
**To:** 'Jeffrey A Conciatori'; 'Michael Carlinsky'
**Cc:** Plevan, Kenneth; Dreyer, Anthony
**Subject:** AIMA

Please see attached letter from Ken.

Stephanie J. Kamerow
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square New York, NY 10036

tel: (212) 735-3465
fax: (917) 777-3465
skamerow@skadden.com

------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************
==============================================================================

# EXHIBIT E

**Rodger D. Smith**

---

**From:** Plevan, Kenneth [KPLEVAN@skadden.com]
**Sent:** Tuesday, August 01, 2006 7:28 PM
**To:** Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA

Mike I have sent a draft proposal to C V Starr for their consideration. However, I am not recommending your language changes with respect to the 3-day notice provision. We are certainly not going to file a declaratopry judgment lawsuit, but we did not go through all of this effort to find ourselves back in court again with no notice and perhaps an ex parte TRO. Nor are the other language changes acceptable.

---

**From:** Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
**Sent:** Tuesday, August 01, 2006 6:49 PM
**To:** Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA

Ken:

Your letter of this afternoon, which we and our clients are reviewing, does not address the advertising issues we discussed. Please confirm that: 1. AIMA will agree not to advertise itself; and 2. AIMA will not use any materials that refers to AIG or suggests any affiliation.

In looking at your letter, I notice that you ask us to withdraw the suit and give 3 days notice before re-filing. What is the purpose of the notice before re-filing provision ? My concern is that, if we give notice, you might file something elsewhere. In addition to advising why you want a notice provision, please confirm that your clients would not file suit themselves during that period.

Finally, I am wondering whether you would agree to change the language from "as promptly as reasonably possible" to something a bit more active, such as "will take all steps and measures to effect the name change, including the necessary regulatory approvals, as promptly as possible."

Please let us know asap.

---

**From:** Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
**Sent:** Tuesday, August 01, 2006 6:24 PM
**To:** Kamerow, Stephanie; Jeffrey A Conciatori; Michael Carlinsky
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA

Jeff and Mike, given my schedule let me know by email tonight where we stand or let's talk early tomorrow. Thanks

---

**From:** Kamerow, Stephanie
**Sent:** Tuesday, August 01, 2006 5:19 PM
**To:** 'Jeffrey A Conciatori'; 'Michael Carlinsky'
**Cc:** Plevan, Kenneth; Dreyer, Anthony
**Subject:** AIMA

Please see attached letter from Ken.

Stephanie J. Kamerow
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square New York, NY 10036
tel: (212) 735-3465
fax: (917) 777-3465
skamerow@skadden.com

------------------------------------------------------------------------------

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

***************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

***************************************************

==============================================================================

# EXHIBIT F

Kenneth A. Plevan (KP 2551)
John L. Gardiner (JG 8715)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Nicholas A. Gravante, Jr. (NG 4411)
Steven I. Froot (SF 7662)
Boies Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022

Attorneys for Plaintiffs/Counterclaim-Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

C. V. STARR & CO., INC., C. V. STARR & CO., and STARR TECHNICAL RISKS AGENCY, INC.,

Plaintiffs,

vs.

AMERICAN INTERNATIONAL GROUP, INC. and STARR EXCESS LIABILITY INSURANCE COMPANY, LTD.,

Defendants.

---

AMERICAN INTERNATIONAL GROUP, INC.,

Counterclaim-Plaintiff,

vs.

C. V. STARR & CO., INC., STARR TECHNICAL RISKS AGENCY, INC., STARR ASSOCIATES, INC., C. V. STARR & CO., and STARR AVIATION AGENCY, INC.,

Counterclaim-Defendants.

---

06 CV 2157 (HB) (KNF)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO ENJOIN AIG FROM PROCEEDING IN RELATED ACTION**

termination of AIMA's MGA agreement, with regard to the trademark issue relevant here AIMA has agreed to transition to a new name. Thus, the only issue raised by AIG's Delaware complaint that requires resolution is the "reasonable time period" by which C. V. Starr must effectuate the name change.

As also set forth in the Plevan Affirmation, given the circumstances here – including the fact that (i) AIMA has been using the American International mark for more than 30 years, and (ii) C. V. Starr must obtain state insurance agency approval before it can conduct business under a new name – six months is a reasonable time period to change AIMA's name. Indeed, the MGA Agreement itself requires AIG to give AIMA 6-months notice prior to terminating the Agreement.

Nor is there likely to be any confusion created by AIMA's continued use of the American International mark during this transitional period. As AIG itself concedes, the relevant customer base here is obviously highly sophisticated. (See Am. Counterclaims ¶ 28.) Accordingly, such consumers are unlikely to be confused by AIMA's use of the American International mark, particularly during a brief transition period. See, e.g., Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1206 (1st Cir. 1983) ("Perhaps the most critical factor that weighs against Astra in our consideration of this issue is the sophistication of the class of prospective purchasers of the subject products."); Beneficial Corp. v. Beneficial Capital Corp., 529 F. Supp. 445, 449-50 (S.D.N.Y. 1982) (dismissing trademark infringement claims on ground, among others, that defendant's customers were highly sophisticated given "their substantial business experience . . . ").

Moreover, the unwinding of AIG's relationship with C. V. Starr has been widely publicized both in the press and in industry trade journals. (See Plevan Aff. ¶ 26.) In addition,

# EXHIBIT G

**Rodger D. Smith**

---

**From:** Plevan, Kenneth [KPLEVAN@skadden.com]
**Sent:** Thursday, August 03, 2006 6:06 PM
**To:** Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA Name Change

yes. The terms are not acceptable. I understand Stephanie already told you we could not accept 3 months as a contractual committment. Nor did I contemplate a contract at all, but rather informal committments in writing as was used to resolve the AIAA situation without the necessity of involving the Court.

---

**From:** Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
**Sent:** Thursday, August 03, 2006 6:01 PM
**To:** Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA Name Change

Have you reviewed the letter I sent you today ?

---

**From:** Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
**Sent:** Thursday, August 03, 2006 5:58 PM
**To:** Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA Name Change

Dear Mike,

I have just had a chance to read this email. I disagree with most of your statements, but do not think that any purpose would be served by responding at this point.

---

**From:** Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
**Sent:** Wednesday, August 02, 2006 9:07 AM
**To:** Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** RE: AIMA Name Change

Ken:

I do not understand why you would take this action in light of the fact that we have had very productive discussions the last few days and, as of last evening, were very close to a resolution.

We are prepared to continue the dialogue, with the hope of reaching a resolution today. But I must say, your filing certainly calls into question all of your purported efforts and whether there is another agenda here beyond resolution.

As for your suggestion that the Delaware action was forum shopping, I will respond in due course to your motion. Suffice to say, a plaintiff incorporated in Delaware certainly has a right to file in that state; AIG has availed itself of that right. Moreover, your clients initiated the action in NY -- not AIG.

And, we remind you that, had it not been for the fact that AIMA's President repeatedly refused to cease using the AIMA mark -- even after the termination by AIMA of the agency relationship -- AIG would not have been forced to file suit. The fact that AIMA acknowledged AIG's rights in the marks (and has agreed to a name change and to cease using the marks) only after suit was filed highlights the frivolity and bad faith of AIMA in the position that it took.

In any event, please advise if you are still prepared to discuss a resolution. If so, I suggest we speak this morning before you leave on your trip. (I assume the filing today before Judge Baer was prompted by the fact that you are leaving town today, not by any stalemate that you perceived us to have reached).

---

**From:** Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
**Sent:** Wednesday, August 02, 2006 8:27 AM
**To:** Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** AIMA Name Change

Dear Mike:

We believe that we have made reasonable commitments with respect to the AIMA name change, and the name change process is underway as we have advised you. In the interim, however, while you have continued to ask for additional commitments, we have yet to receive any assurances that your client will not prosecute the lawsuit filed Friday afternoon in Delaware. Indeed, notwithstanding our request, you proceeded to serve the Complaint.

As we have advised you in writing, we consider the Delaware lawsuit an improper attempt at forum shopping. The dispute over the length of the transition period for AIMA to change its name, to the extent that it needs to be in Court at all, certainly should be raised with Judge Baer, who is already familiar with the background and has similar issues pending before him now on our motion to dismiss the counterclaims.

We are, accordingly, proceeding to present Judge Baer with an Order to Show Cause which will seek an injunction against your prosecution of the Delaware lawsuit. I am attaching a copy of the papers. As soon as we have any information from Judge Baer's Chambers we will advise you.

---

**From:** Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
**Sent:** Tuesday, August 01, 2006 11:32 PM
**To:** Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
**Cc:** Dreyer, Anthony
**Subject:** Re: AIMA

Ken:

I don't understand why the 3 day notice. If its only to insure that we don't refile and seek an ex parte tro, we can address that. It is not our intention to do that so long as AIMA is working toward effecting a name change.

As regards the other language that you find iunacceptable, I am troubled by your rejection. Is there language you are willing to commit to that imposes more of an affirmative obligation than the language in your letter ? Your language doesn't really impose amn affirmative obligation. If, as you say, AIMA desires a name change, I would expect you would be willing to commit to getting the change as quickly as possible. My propsed language was intended to accomplish this.

We await your next response.
--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Plevan, Kenneth <KPLEVAN@skadden.com>
To: Michael Carlinsky; Kamerow, Stephanie <SKAMEROW@skadden.com>; Jeffrey A Conciatori
CC: Dreyer, Anthony <ADREYER@skadden.com>
Sent: Tue Aug 01 16:28:10 2006
Subject: RE: AIMA

Mike I have sent a draft proposal to C V Starr for their consideration. However, I am not recommending your language changes with respect to the 3-day notice provision. We are certainly not going to file a declaratopry judgment lawsuit, but we did not go through all of this effort to find ourselves back in court again with no notice and perhaps an ex parte TRO. Nor are the other language changes acceptable.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Tuesday, August 01, 2006 6:49 PM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: RE: AIMA

Ken:

Your letter of this afternoon, which we and our clients are reviewing, does not address the advertising issues we discussed. Please confirm that: 1. AIMA will agree not to advertise itself; and 2. AIMA will not use any materials that refers to AIG or suggests any affiliation.

In looking at your letter, I notice that you ask us to withdraw the suit and give 3 days notice before re-filing. What is the purpose of the notice before re-filing provision ? My concern is that, if we give notice, you might file something elsewhere. In addition to advising why you want a notice provision, please confirm that your clients would not file suit themselves during that period.

Finally, I am wondering whether you would agree to change the language from "as promptly as reasonably possible" to something a bit more active, such as "will take all steps and measures to effect the name change, including the necessary regulatory approvals, as promptly as possible."

Please let us know asap.

---

From: Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
Sent: Tuesday, August 01, 2006 6:24 PM
To: Kamerow, Stephanie; Jeffrey A Conciatori; Michael Carlinsky
Cc: Dreyer, Anthony
Subject: RE: AIMA

Jeff and Mike, given my schedule let me know by email tonight where we stand or let's talk early tomorrow. Thanks

---

From: Kamerow, Stephanie
Sent: Tuesday, August 01, 2006 5:19 PM
To: 'Jeffrey A Conciatori'; 'Michael Carlinsky'
Cc: Plevan, Kenneth; Dreyer, Anthony
Subject: AIMA

Please see attached letter from Ken.

Stephanie J. Kamerow

Skadden, Arps, Slate, Meagher & Flom, LLP

Four Times Square New York, NY 10036

tel: (212) 735-3465

fax: (917) 777-3465

skamerow@skadden.com

------------------------------------------------------------------------------

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or

recommending to another party any tax-related matters addressed herein.

**************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************

---

# EXHIBIT H

**Rodger D. Smith**

---

**From:** Michael Carlinsky [michaelcarlinsky@quinnemanuel.com]
**Sent:** Sunday, August 06, 2006 9:50 AM
**To:** Rodger D. Smith
**Subject:** Fw: AIMA Name Change

--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Michael Carlinsky
To: 'KPLEVAN@skadden.com' <KPLEVAN@skadden.com>; 'SKAMEROW@skadden.com' <SKAMEROW@skadden.com>; Jeffrey A Conciatori
CC: 'ADREYER@skadden.com' <ADREYER@skadden.com>; 'Timothy.Greensfelder@AIG.com' <Timothy.Greensfelder@AIG.com>; Emily Costello; Robert Raskopf
Sent: Sun Aug 06 06:48:26 2006
Subject: Re: AIMA Name Change

Thanks. Just wanted to make sure that was your position on all of the terms, not just the three month issue. You have made it clear in your below email.
--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Plevan, Kenneth <KPLEVAN@skadden.com>
To: Michael Carlinsky; Kamerow, Stephanie <SKAMEROW@skadden.com>; Jeffrey A Conciatori
CC: Dreyer, Anthony <ADREYER@skadden.com>; Greensfelder, Timothy <Timothy.Greensfelder@aig.com>; Emily Costello; Robert Raskopf
Sent: Sun Aug 06 00:38:30 2006
Subject: RE: AIMA Name Change

Mike:

I thought our position was clear that we are not willoing to enter into a formal agreement, which you continue to insist on.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Friday, August 04, 2006 5:43 PM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori; Michael Carlinsky
Cc: Dreyer, Anthony; Greensfelder, Timothy; Emily Costello; Robert Raskopf
Subject: RE: AIMA Name Change

Ken:

Leaving aside the "3 month issue," are you willing to sign the agreement with respect to the other provisions, like cessation of marketing and advertising ? If so, then we can try to work out "the 3 month issue." But if you are not willing to execute an agreement as to the other issues, which are not affected by the pace of the insurance department approvals, then you are offering us nothing to resolve the matter.

Please advise what your position is as soon as possible. I will be checking blackberry all weekend.

---

From: Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
Sent: Thursday, August 03, 2006 6:25 PM

To: Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony; Greensfelder, Timothy; Emily Costello; Robert Raskopf
Subject: RE: AIMA Name Change

Mike, to my knowledge AIMA is in fact proceeding ahead as we outlined. AIG on its part was to withdraw the Delaware lawsuit (as well as not serve it). We are not negotiating a "contract" as you apparently envision it because the state approvals are uncertain as to timing and can't be guaranteed. We are not willing to violate insurance law on the name usage, nor are we willing to stop competing with AIG. I don't know what else to say.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Thursday, August 03, 2006 6:12 PM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony; Greensfelder, Timothy; Emily Costello; Robert Raskopf
Subject: RE: AIMA Name Change

You have already made commitments -- including to the Court -- that you need 3 months. The letter I sent you is consistent with that. I don't understand why you would reject a contractual commitment, especially when we need a document to reflect the other terms regarding advertising etc.

Should I interpret your statement that the "terms are not acceptable" to mean that you do not wish to continue settlement discussions ? Or do you have some proposed language on the "3 month issue" and the other terms that you want to propose ?

---

From: Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
Sent: Thursday, August 03, 2006 6:06 PM
To: Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: RE: AIMA Name Change

yes. The terms are not acceptable. I understand Stephanie already told you we could not accept 3 months as a contractual committment. Nor did I contemplate a contract at all, but rather informal committments in writing as was used to resolve the AIAA situation without the necessity of involving the Court.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Thursday, August 03, 2006 6:01 PM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: RE: AIMA Name Change

Have you reviewed the letter I sent you today ?

---

From: Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
Sent: Thursday, August 03, 2006 5:58 PM
To: Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: RE: AIMA Name Change

Dear Mike,

I have just had a chance to read this email. I disagree with most of your statements, but do not think that any purpose would be served by responding at this point.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Wednesday, August 02, 2006 9:07 AM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: RE: AIMA Name Change

Ken:

I do not understand why you would take this action in light of the fact that we have had very productive discussions the last few days and, as of last evening, were very close to a resolution.

We are prepared to continue the dialogue, with the hope of reaching a resolution today. But I must say, your filing certainly calls into question all of your purported efforts and whether there is another agenda here beyond resolution.

As for your suggestion that the Delaware action was forum shopping, I will respond in due course to your motion. Suffice to say, a plaintiff incorporated in Delaware certainly has a right to file in that state; AIG has availed itself of that right. Moreover, your clients initiated the action in NY -- not AIG.

And, we remind you that, had it not been for the fact that AIMA's President repeatedly refused to cease using the AIMA mark -- even after the termination by AIMA of the agency relationship -- AIG would not have been forced to file suit. The fact that AIMA acknowledged AIG's rights in the marks (and has agreed to a name change and to cease using the marks) only after suit was filed highlights the frivolity and bad faith of AIMA in the position that it took.

In any event, please advise if you are still prepared to discuss a resolution. If so, I suggest we speak this morning before you leave on your trip. (I assume the filing today before Judge Baer was prompted by the fact that you are leaving town today, not by any stalemate that you perceived us to have reached).

---

From: Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
Sent: Wednesday, August 02, 2006 8:27 AM
To: Michael Carlinsky; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: AIMA Name Change

Dear Mike:

We believe that we have made reasonable commitments with respect to the AIMA name change, and the name change process is underway as we have advised you. In the interim, however, while you have continued to ask for additional commitments, we have yet to receive any assurances that your client will not prosecute the lawsuit filed Friday afternoon in Delaware. Indeed, notwithstanding our request, you proceeded to serve the Complaint.

As we have advised you in writing, we consider the Delaware lawsuit an improper attempt at forum shopping. The dispute over the length of the transition period for AIMA to change its name, to the extent that it needs to be in Court at all, certainly should be raised with Judge Baer, who is already familiar with the background and has similar issues pending before him now on our motion to dismiss the counterclaims.

We are, accordingly, proceeding to present Judge Baer with an Order to Show Cause which will seek an injunction against your prosecution of the Delaware lawsuit. I am attaching a copy of the papers. As soon as we have any information from Judge Baer's Chambers we will advise you.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Tuesday, August 01, 2006 11:32 PM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: Re: AIMA

Ken:

I don't understand why the 3 day notice. If its only to insure that we don't refile and seek an ex parte tro, we can address that. It is not our intention to do that so long as AIMA is working toward effecting a name change.

As regards the other language that you find iunacceptable, I am troubled by your rejection. Is there language you are willing to commit to that imposes more of an affirmative obligation than the language in your letter ? Your language doesn't really impose amn affirmative obligation. If, as you say, AIMA desires a name change, I would expect you would be willing to commit to getting the change as quickly as possible. My propsed language was intended to accomplish this.

We await your next response.
--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Plevan, Kenneth <KPLEVAN@skadden.com>
To: Michael Carlinsky; Kamerow, Stephanie <SKAMEROW@skadden.com>; Jeffrey A Conciatori
CC: Dreyer, Anthony <ADREYER@skadden.com>
Sent: Tue Aug 01 16:28:10 2006
Subject: RE: AIMA

Mike I have sent a draft proposal to C V Starr for their consideration. However, I am not recommending your language changes with respect to the 3-day notice provision. We are certainly not going to file a declaratopry judgment lawsuit, but we did not go through all of this effort to find ourselves back in court again with no notice and perhaps an ex parte TRO. Nor are the other language changes acceptable.

---

From: Michael Carlinsky [mailto:michaelcarlinsky@quinnemanuel.com]
Sent: Tuesday, August 01, 2006 6:49 PM
To: Plevan, Kenneth; Kamerow, Stephanie; Jeffrey A Conciatori
Cc: Dreyer, Anthony
Subject: RE: AIMA

Ken:

Your letter of this afternoon, which we and our clients are reviewing, does not address the advertising issues we discussed. Please confirm that: 1. AIMA will agree not to advertise itself; and 2. AIMA will not use any materials that refers to AIG or suggests any affiliation.

In looking at your letter, I notice that you ask us to withdraw the suit and give 3 days notice before re-filing. What is the purpose of the notice before re-filing provision ? My concern is that, if we give notice, you might file something elsewhere. In addition to advising why you want a notice provision, please confirm that your clients would not file suit themselves during that period.

Finally, I am wondering whether you would agree to change the language from "as promptly as reasonably possible" to something a bit more active, such as "will take all steps and measures to effect the name change, including the necessary regulatory approvals, as promptly as possible."

Please let us know asap.

---

From: Plevan, Kenneth [mailto:KPLEVAN@skadden.com]
Sent: Tuesday, August 01, 2006 6:24 PM
To: Kamerow, Stephanie; Jeffrey A Conciatori; Michael Carlinsky
Cc: Dreyer, Anthony
Subject: RE: AIMA

Jeff and Mike, given my schedule let me know by email tonight where we stand or let's talk early tomorrow. Thanks

---

From: Kamerow, Stephanie
Sent: Tuesday, August 01, 2006 5:19 PM
To: 'Jeffrey A Conciatori'; 'Michael Carlinsky'
Cc: Plevan, Kenneth; Dreyer, Anthony
Subject: AIMA

Please see attached letter from Ken.

Stephanie J. Kamerow

Skadden, Arps, Slate, Meagher & Flom, LLP

Four Times Square New York, NY 10036

tel: (212) 735-3465

fax: (917) 777-3465

skamerow@skadden.com

------------------------------------------------------------------------------

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

**************************************************

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were caused to be served on August 8, 2006, upon the following in the manner indicated:

**BY HAND**

Edward P. Welch
Edward B. Micheletti
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801

Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com