**CERTIFICATE OF SERVICE**

I, Edward B. Micheletti, hereby certify that on August 16, 2006, a copy of the Motion to Transfer, Opening Brief In Support of Defendants' Motion To Transfer Venue, proposed Order, Transmittal Affidavit of Jennesse E. Parker To Defendants' Opening Brief In Support of Their Motion To Transfer and Compendium of Unreported Opinions were served on the following counsel of record :

> VIA CM/ECF
> Rodger D. Smith II, Esquire
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

> /s/ Edward B. Micheletti
> Edward B. Micheletti (I.D. No. 3794)
> SKADDEN, ARPS, SLATE, MEAGHER
>   & FLOM LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware  19899-0636
> (302) 651-3000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMERICAN INTERNATIONAL GROUP, INC., :
:
    Plaintiff, :
              v. : Case No. 06-463
:
C.V. STARR & CO., INC. and AMERICAN :
INTERNATIONAL MARINE AGENCY OF :
NEW YORK, INC., :
:
    Defendants. :
:

**OPENING BRIEF IN SUPPORT
OF DEFENDANTS' MOTION TO TRANSFER VENUE**

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
Attorneys for Defendants

DATED: August 16, 2006

## TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

      A.    The Parties ................................................................................................2

      B.    The New York Action................................................................................2

      C.    The Delaware Action ................................................................................3

      D.    The Relatedness Of The New York And Delaware Actions .......................4

      E.    C.V. Starr Takes Steps To Prevent AIG From Forum Shopping ................5

ARGUMENT ...............................................................................................................................6

      A.    AIG Could Have Originally Brought This Action In The Southern District Of New York ................................................................6

      B.    The Southern District Of New York Is The Most Convenient Venue For the Parties And Witnesses Involved In This Action ................7

      C.    Judicial Economy And Interests Of Justice Warrant A Transfer To The Southern District Of New York, Where The First-Filed Litigation Between The Parties Is Already Pending ................8

      D.    AIG's Choice Of Delaware As The Forum For This Lawsuit Does Not Weigh In Favor Of Remaining In Delaware ................11

CONCLUSION .........................................................................................................................13

**TABLE OF CASES AND AUTHORITIES**

<u>CASES</u>                                                                                                              <u>PAGE NO.</u>

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp. 2d 192 (D. Del. 1998)........................................................................8

*Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*,
   736 F. Supp. 1294 (D.N.J. 1990).................................................................10, 11

*Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc.*,
   C.A. No. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005)................12

*Bell Tel. Labs., Inc .v. IBM Corp.*,
   630 F. Supp. 373 (D. Del. 1984)........................................................................11

*C.V. Starr & Co. v. Am. Int'l Group, Inc.*,
   C.A. No. 06-2157, 2006 WL 1230266 (S.D.N.Y. May 9, 2006)...........2, 3, 4, 9

*Cont'l Cas. Co. v. Am. Home Assurance Co.*,
   61 F. Supp. 2d 128 (D. Del. 1999).....................................................................12

*Crosley Corp. v. Hazeltine Corp.*,
   122 F.2d 925 (3d Cir. 1941)................................................................................9

*Dippold-Harmon Enters., Inc. v. Lowe's Cos.*,
   C.A. No. 01-532-GMS, 2001 WL 1414868 (D. Del. Nov. 13, 2001) ..........9, 10

*Filler v. Lernout*,
   C.A. Nos. 01-191-SLR, 01-298-SLR, 01-379-SLR, 01-380-SLR, 2002
   WL 227079 (D. Del. Feb. 8, 2002) ................................................................9, 10

*Gen. Felt Prod. Co. v. Allen Indus., Inc.*,
   120 F. Supp. 491 (D. Del. 1954).........................................................................8

*Jahncke Serv., Inc. v. OKC Corp.*,
   301 F. Supp. 866 (D. Del. 1969).........................................................................8

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)..................................................................................6

*Kirschner Bros. Oil, Inc. v. Pannill*,
   697 F. Supp. 804 (D. Del. 1988)...................................................................6, 12

*Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*,
   C.A. No. 96-40-MMS, 1996 WL 328596 (D. Del. June 7, 1996) ...................... 8

*Scott Paper Co. v. Faucet-Queens, Inc.*,
   C.A. No. 86-493-CMW, 1987 WL 28488 (D. Del. Jan. 14, 1987) .................... 6

*Sequa Capital Corp. v. Miller & Miller Assocs., Inc.*,
   C.A. No. 92-3761-LJF, 1992 WL 204372 (S.D.N.Y. Aug. 11, 1992) ............. 11

*Shatterproof Glass Corp. v. Guardian Indus. Corp.*,
   C.A. No. 86-607-MMW, 1987 WL 11773 (D. Del. May 4, 1987) .................. 12

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1998) ............................................................................................. 6

*Tiegel Mfg. Co. v. Globe-Union, Inc.*,
   C.A. No. 84-483-WKS, 1984 WL 24 (D. Del. Oct. 23, 1984) ......................... 11

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*,
   201 F. Supp. 2d 294 (D. Del. 2002) ......................................................... 12, 13

## STATUTES

28 U.S.C. § 1332(c)(1) ............................................................................................ 7

28 U.S.C. § 1367(a) ................................................................................................ 7

28 U.S.C. § 1391(b) ................................................................................................ 7

28 U.S.C. § 1391(c) ................................................................................................ 7

28 U.S.C. § 1404(a) ............................................................................................ 1, 6

## PRELIMINARY STATEMENT

This federal trademark litigation – between two well-known New York-headquartered companies engaged in a very public unwinding of their long-standing business relationship – is a prime candidate for a transfer of venue pursuant to 28 U.S.C. § 1404(a). All of the parties in this action are based in New York City. All of the key executives of the parties, who have knowledge of the facts underlying the dispute, work in New York, as do most, if not all, of the other potential fact witnesses. All of the documents that are relevant to this action appear to be located in New York. Finally, and perhaps most importantly, there is already an ongoing trademark dispute between the parties pending in the United States District Court, Southern District of New York that predates the filing of this action by nearly four months. Many of the factual and legal issues raised in both this action and the first-filed New York action are overlapping.

Accordingly, a transfer of this action to the Southern District of New York would provide the parties and witnesses involved with the most convenient location for resolving this dispute. A transfer would also clearly serve the interests of justice and promote judicial economy because the same judge in the Southern District of New York – Judge Harold Baer, who has already issued a preliminary injunction opinion in that case, and is intimately familiar with the extensive background facts underlying this matter – would almost certainly preside over this case.

For these reasons, and for the additional reasons expressed below, Defendants respectfully request that the Court grant their motion to transfer pursuant to Section 1404(a), and transfer this matter to the Southern District of New York.

## STATEMENT OF FACTS

### A. The Parties.

All of the parties in this action have close ties to New York. Plaintiff American International Group, Inc. ("AIG") and Defendant C.V. Starr & Co., Inc. ("C.V. Starr") are both headquartered in New York City. (Compl. ¶¶ 2-3) American International Marine Agency of New York, Inc. ("AIMA") is also headquartered in New York City, and is incorporated under New York law. (Compl. ¶ 4)

C.V. Starr is the parent company of four active managing general agencies ("MGAs"), including AIMA. (Parker Aff. Ex. A ¶ 3) AIMA has served as a managing general agent for AIG insurance companies since at least 1975. (Compl. ¶ 25)

### B. The New York Action.

In January and February of 2006, AIG terminated three of the C.V. Starr agencies, thus beginning the process of unwinding their decades long business relationship. As a result, many disputes have arisen between the two companies, including a lawsuit filed on March 20, 2006 in the Southern District of New York over the usage and ownership of various trademarks (the "New York Action"). *See also C.V. Starr & Co. v. Am. Int'l Group, Inc.*, 06 Civ. 2157 (HB), 2006 WL 1230266, at *1 (S.D.N.Y. May 9, 2006) (noting that the New York Action "stems from the demise of [the] longstanding business relationship between CV Starr and AIG").

On April 20, 2006, C.V. Starr filed an amended complaint in the New York Action, alleging that AIG was infringing certain STARR marks. (Parker Aff. Ex. B) On May 9, 2006, Judge Baer granted, in part, C.V. Starr's motion for a preliminary injunction, holding that AIG was no longer permitted to operate or display content on a

2

website accessed through cvstarr.com. *C.V. Starr*, 2006 WL 1230266, at *5. The Court further directed the parties to "commence immediately" with expedited discovery on the various trademark claims, and to have discovery completed by October 10, 2006. *Id.* A trial on the merits is scheduled for February 2007.

On June 5, 2006, AIG filed an answer, affirmative defenses and amended counterclaims against C.V. Starr and certain of its MGAs in the New York Action, alleging that C.V. Starr and its affiliates were infringing certain AIG marks and furthermore that AIG, not C.V. Starr, owned all of the STARR marks. (Parker Aff. Ex. C) Throughout its amended counterclaims, AIG makes repeated references to AIMA, and AIG's relationship to AIMA.[1] (Parker Aff. Ex. C ¶¶ 23, 24, 27, 28, 91, and 94)

### C. The Delaware Action.

On July 25, 2006, AIG issued a letter immediately terminating the agency relationship with AIMA. (Compl. ¶ 47) Three days later, on July 28, 2006, AIG filed this trademark complaint against C.V. Starr and AIMA in order to enjoin AIMA's use of "the designation AMERICAN INTERNATIONAL MARINE AGENCY, the abbreviation AIMA, and any other designation that trades upon the goodwill of AIG's federally registered and world famous marks (referred to collectively herein as AIG's 'AMERICAN INTERNATIONAL Marks')" (the "Delaware Action").[2] (Compl. ¶ 1)

---

[1] A motion to dismiss these counterclaims has been fully briefed and argued on August 11, 2006. The parties are now awaiting a decision by Judge Baer.

[2] A conference call was held with Chief Judge Robinson of the District Court of Delaware on August 9, 2006 to discuss AIG's application for a temporary restraining order and motion for a preliminary injunction. During that conference call, counsel for Defendants indicated their intention to file a Section 1404(a) motion to transfer. Judge Robinson subsequently directed Defendants to "file responsive papers" by August 16, 2006. AIG has the opportunity to reply by August 23, 2006, and argument has been scheduled for August 30, 2006.

### D. The Relatedness Of The New York And Delaware Actions.

Many similarities are readily apparent between the Delaware Action and the New York Action. AIG has raised similar false advertising claims in both actions. For instance, in the Delaware Action, AIG contends that reference to certain marks on the C.V. Starr website constitutes false advertising:

> The Marine Agency continues to prominently use the AMERICAN INTERNATIONAL and AIMA marks in connection with marine insurance, impermissibly trading off of the substantial goodwill embodied in the AMERICAN INTERNATIONAL Marks and creating confusion in the marketplace and the false impression that the Marine Agency continues to be affiliated with AIG.

(Compl. ¶ 53) Similarly, in the New York Action, in support of the legal sufficiency of its Amended Counterclaims, AIG contends that references in advertisements, such as the Spring 2006 "Starr Power" Wall Street Journal advertisement, constituted false advertising:

> Specifically, these ads make prominent use of the American International trademark (abbreviated as AI) in close proximity to the Starr trademark in the text of the ads, creating the false impression that Movants' remain affiliated with AIG.

(Parker Aff. Ex. D at 20)

The issue of customer or market "confusion" also figures prominently in both actions. (*Compare* Compl. ¶ 53 *with C.V. Starr*, 2006 WL 1230266, at *5.)

Further, various factual allegations found in the complaint in the Delaware Action are paraphrases of, or at times word-for-word identical to, the allegations contained in AIG's Amended Counterclaims in the New York Action. (*Compare* Compl. ¶¶ 31-35 *with* Parker Aff. Ex. C ¶¶ 63, 64, 66, 67 and 72) A senior AIG executive, Ralph Mucerino, has also submitted written declarations in both actions containing very similar

-4-

descriptions of the history and relationship of AIG and C.V. Starr. *Compare* Mucerino Delaware Declaration, D.I. 10 *with* Mucerino New York Declaration, Parker Aff. Ex. E)

### E. C.V. Starr Takes Steps To Prevent AIG From Forum Shopping.

On August 1, 2006, counsel for C.V. Starr and AIMA filed an application to enjoin AIG from proceeding with the Delaware Action in light of the first-filed New York Action. (Parker Aff. Ex. F) Argument on this motion was held on August 11, 2006. During argument, Judge Baer inquired as to whether C.V. Starr and AIMA would be filing a § 1404(a) motion to transfer in the Delaware Action, to which counsel replied affirmatively. (Parker Aff. Ex. G ¶ 5) After argument, Judge Baer stated that he was reserving decision on C.V. Starr and AIMA's motion to enjoin the parties from proceeding with the Delaware Action, as well as the motion to dismiss AIG's Amended counterclaims. (Parker Aff. Ex. G ¶ 6)

## ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), a district court, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . may transfer any civil action to any other district or division where it might have been brought." *See also Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1988). Section 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1998)). As shown below, convenience and fairness considerations overwhelmingly warrant a transfer of this matter to the Southern District of New York -- a venue where AIG could have filed this lawsuit originally; all of the parties and relevant documents, and most -- if not all -- of the witnesses are located; and AIG has been engaged in litigation with C.V. Starr over similar trademark-related issues for nearly four months.

**A.   AIG Could Have Originally Brought This Action In The Southern District Of New York.**

Before the Court determines whether a transfer is appropriate, it must first determine whether the plaintiff would have been able to bring the suit in the transferee district. *See, e.g., Scott Paper Co. v. Faucet-Queens, Inc.*, C.A. No. 86-493-CMW, 1987 WL 28488, at *1 (D. Del. Jan. 14, 1987). It is difficult to imagine that this is even an issue, given that all of the parties in this action have their principal places of business in New York City, and the two parent organizations have been engaged in a trademark lawsuit in the Southern District of New York over the past four months.

Moreover, this action, which arises principally under the Lanham Act, invokes federal question jurisdiction. Pursuant to 28 U.S.C. § 1391(b), a civil action based upon a federal question may be brought in the district where all the defendants reside. For purposes of venue, a corporation is a resident in any judicial district where it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c). The parties to this lawsuit – AIG, C.V. Starr, and AIMA – all have their principal places of business in New York City; thus, they are subject to personal jurisdiction in the Southern District of New York. *See* 28 U.S.C. § 1332(c)(1). As for the claims purportedly involving Delaware law issues, the Southern District of New York would be able to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a).[3] For these reasons, AIG would have been able to bring all of the claims in this action in the Southern District of New York.

### B. The Southern District Of New York Is The Most Convenient Venue For the Parties And Witnesses Involved In This Action.

The Southern District of New York is clearly the most convenient location for the parties and witnesses involved in this case. As explained above, New York City is the principal place of business for all of the parties in this action, as well as AIG Global Marine, the unit of AIG that was specifically established at the time of the termination to compete with AIMA. Each has their executive offices there, and all of the senior executives familiar with the facts, as well as all relevant documents, are located in New York City.[4] Any other remaining fact witnesses in this action will likely be New York

---

[3] In fact, it is not clear that Delaware law will be applicable in this action given that all of the parties are headquartered in New York and AIMA is a New York corporation. Further, in the New York Action, AIG's counterclaims appear to have asserted five claims under state law, none of which designate Delaware law.

[4] In addition, AIG submitted two declarations in support of its motion—one from Ralph Mucerino, Vice President of AIG and President of AIG Global Marine and Energy, and one from Michael B. Carlinsky, AIG's New York counsel. Mr. Mucerino's declaration is devoted almost exclusively to discussing letters sent to and from David French, President and CEO of AIMA. Both Mr. Mucerino and

7

residents. All of these factors, none of which AIG can fairly dispute, weigh in favor of a transfer. *See, e.g., Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*, C.A. No. 96-40 MMS, 1996 WL 328596, at *6 (D. Del. June 7, 1996) (weighing "convenience of the parties" factor in favor of transfer where all "officers, directors, employees and other individuals with pertinent knowledge are located in the same state"); *Jahncke Serv., Inc. v. OKC Corp.*, 301 F. Supp. 866, 868 (D. Del. 1969) (granting motion to transfer where "nearly all the witnesses" were located outside of Delaware); *Gen. Felt Prod. Co. v. Allen Indus.*, 120 F. Supp. 491, 494 (D. Del. 1954) (transferring case from Delaware, in part, because "neither defendant nor its witnesses inhabit the corporate domicile nor maintain . . . records or other evidence anticipated for use in the suit [there]. . . ").[5]

C.  **Judicial Economy And Interests Of Justice Warrant A Transfer To The Southern District Of New York, Where The First-Filed Litigation Between The Parties Is Already Pending.**

The interests of justice warrant a transfer of this matter to the Southern District of New York, where the principal parties in this action are already engaged in an ongoing trademark dispute. Like this action, the first-filed New York action stems directly from the breakup of the business relationship between AIG and C.V. Starr, and the use of each company's marks. It is well-settled under the "first-filed" rule that "'[i]n all cases of federal concurrent jurisdiction the court which first had possession of the

---

Mr. French, as well as their respective entities, are located in New York. Similarly, the declaration of Mr. Carlinsky, a New York-based attorney, is devoted almost exclusively to memorializing settlement correspondence between himself and another attorney, also located in New York. There is not a single fact or exhibit either Mr. Mucerino or Mr. Carlinsky have raised in these affidavits that implicates any jurisdiction other than New York.

[5] This lawsuit was certainly not filed in Delaware for the convenience of counsel, as both sides have their New York-based counsel participating in this action. Transferring this case to the Southern District of New York would eliminate the expense of this additional legal representation for all parties, not just Defendants. *See, e.g., Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205-06 (D. Del. 1998) (holding the transfer of the actions to California would eliminate the need for local counsel, further reducing the cost of the litigation for *all* parties).

8

subject must decide it.'" *Filler v. Lernout*, C.A. Nos. 01-191-SLR, 01-298-SLR, 01-379-SLR, 01-380-SLR, 2002 WL 227079, at *2 (D. Del. Feb. 8, 2002) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). This rule is "designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court." *Dippold-Harmon Enters., Inc. v. Lowe's Cos.*, C.A. No. 01-532-GMS, 2001 WL 1414868, at *4 (D. Del. Nov. 13, 2001). "Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *Filler*, 2002 WL 227079, at *2.

AIG cannot fairly dispute that many of the issues raised in the Delaware Action are closely related to the issues AIG has already raised in the first-filed New York Action. Similar claims of false advertising and customer confusion have already been raised in the New York Action. In fact, Judge Baer has already addressed the issue of customer confusion in a written opinion. *See C.V. Starr & Co. v. Am. Int'l Group, Inc.*, 06 Civ. 2157 (HB), 2006 WL 1230266 (S.D.N.Y. May 9, 2006). Moreover, many of the background allegations raised in AIG's complaint in the Delaware Action are similar, if not identical, to the factual allegations raised in AIG's counterclaims in the New York Action. Further, the same senior AIG executive, Mr. Mucerino, has submitted written declarations in both actions containing nearly identical statements about the relationship between AIG and C.V. Starr.

Ignoring the similarities between the Delaware Action and the first-filed New York Action, AIG has suggested that a transfer pursuant to the first-filed rule would not be appropriate because the trademarks at issue in the New York Action are different than the marks at issue here. This contention, however, overlooks that even where

9

separate cases do not involve the same claims or legal issues, but arise *generally* out of the same set of facts, this court has held that the first-filed requirement is satisfied, and transfer is appropriate. *See, e.g., Filler*, 2002 WL 227079, at *2 (directing a § 1404(a) transfer where case filed in Delaware was generally related to first-filed action in the transferee district because it involved the same set of facts, though not the same claims); *Dippold-Harmon*, 2001 WL 1414868, at *5 (transferring later-filed Delaware action to North Carolina, where first-filed action was already pending; holding that even though each action raised a different legal theory -- *i.e.* breach of written agreement versus a breach of an oral agreement -- both actions arose out of the same business relationship between the parties, and that "[t]o have two separate trials on these issues would defeat the purposes of the 'first-filed' rule, namely sound judicial administration and comity among federal courts of equal rank"). Though the trademarks at issue in the New York and Delaware actions may be different, the factual underpinning of both actions -- *i.e.*, the break-up of the business relationship between AIG and C.V. Starr that led to the various trademark disputes at issue between the parties -- is exactly the same.

AIG has also suggested that a transfer is not appropriate because AIMA is not a party to the New York Action. This argument, however, overlooks that the parties to the New York Action have an express understanding that AIMA would be bound by the New York Court's decisions *as if it were a party*. (Parker Aff. Ex. A ¶ 27)

Finally, AIG has suggested that a transfer in deference to a first-filed action is only appropriate when the later-filed action would be considered a "compulsory" counterclaim in the first-filed action. This is not so. *See, e.g., Am. Tel. & Tel. Co. v. MCI Commnc'ns Corp.*, 736 F. Supp. 1294, 1310 n.21 (D.N.J. 1990) (transferring the case

10

where the claims in one case would be permissive counterclaims in the other); *Sequa Capital Corp. v. Miller & Miller Assocs., Inc.*, No. 92 Civ. 3761 (LJF), 1992 WL 204372, at *4 (S.D.N.Y. Aug. 11, 1992) (transferring case where the claims "would qualify as permissive counterclaims in the [first-filed] Texas Action"); *see also Dippold-Harmon*, 2001 WL 1414868, at *5.

In short, a transfer to the same forum as the first-filed New York Action is appropriate, and would reduce the risk of inconsistent factual and legal findings stemming from the unwinding of the relationship between AIG and C.V. Starr. *See, e.g., Am. Tel. & Tel. Co.*, 736 F. Supp. at 1300 (permitting § 1404(a) transfer where risk of inconsistent judgments from claims involving deceptive telemarketing practices between same parties were pending in two separate jurisdictions); *Tiegel Mfg. Co. v. Globe-Union, Inc.*, C.A. No. 84-483-WKS, 1984 WL 24, at *5 (D. Del. Oct. 23, 1984) (stating "it would be a waste of both judicial resources and the resources of the parties to create a situation in which the parties would be forced to educate one judge in the subject matter of this action so that he could decide the laches and estoppel issues and then require that the parties educate a different judge in California so that he could rule on the issues of validity and infringement. . . . This interest of justice factor is sufficient *by itself* to warrant transfer, and accordingly, this case will be transferred.").

**D.   AIG's Choice Of Delaware As The Forum For This Lawsuit Does Not Weigh In Favor Of Remaining In Delaware.**

AIG's selection of Delaware as its choice of forum should not tip the scale against transferring this matter to New York. Delaware is not AIG's "home turf," and -- apart from being incorporated here -- AIG has no special connection to the state. *See, e.g., Bell Tel. Labs., Inc. v. IBM Corp.*, 630 F. Supp. 373, 376-77 (D. Del. 1984) (holding

11

that § 1404(a) transfer was appropriate, in part after concluding that just because "Delaware is plaintiff's state of incorporation [does not] make it plaintiff's home turf" and a reason to retain action there); *see also Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc.*, C.A. No. 05-357-SLR, 2005 WL 2786691, at *2 (D. Del. Oct. 26, 2005) (finding § 1404(a) transfer appropriate after deciding that plaintiff's "home turf" was in New York, where it maintained its principal place of business, even though it was incorporated in Delaware).

This Court has stressed that where a "plaintiff chooses a forum which is not his 'home turf' and which has no connection to any of the acts giving rise to the lawsuit . . . the convenience to the plaintiff of litigating in his chosen forum is not as great." *Kirschner Bros.*, 697 F. Supp. at 806; *see also Shatterproof Glass Corp. v. Guardian Indus. Corp.*, C.A. No. 86-607 CMW, 1987 WL 11773, at *2 (D. Del. May 4, 1987) (finding that "[b]ecause Delaware is not [Plaintiff's] home turf, the burden on [Defendant] to succeed on a motion to transfer is not as great," even where both plaintiff and defendant were incorporated in Delaware); *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999) (noting the rule that where "plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred" the transfer is easier to obtain).

In addition, the State of Delaware itself has no interest in resolving what is essentially a trademark dispute under federal law. The trademarks at issue are by no means "local" or of special significance to Delaware. *See, e.g., Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002) (transferring case from Delaware because the "trademark infringement claim is based on the launch of a

nationwide joint venture with no particular contact to the chosen forum other than the incorporation of Virgin Mobile USA in Delaware"). And, as previously noted, it is not clear whether Delaware law will apply to the claims raised in this action given the significant New York nexus to the parties and issues involved.

## CONCLUSION

For the reasons set forth above, Defendants' motion to transfer venue should be granted, and the Delaware Action should be transferred to the United States District Court for the Southern District of New York.

*/s/ Edward B. Micheletti*

Edward P. Welch (I.D. No. 671)
Edward B. Micheletti (I.D. No. 3794)
Jenness E. Parker (I.D. No. 4659)
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000
Attorneys for Defendants

OF COUNSEL:
Kenneth A. Plevan
John L. Gardiner
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036-6522
(212) 735-3000
Attorneys for Defendants

DATED: August 16, 2006