IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>C. V. STARR & CO., INC. and AMERICAN )<br>INTERNATIONAL MARINE AGENCY OF )<br>NEW YORK, INC., )<br>)<br>Defendants. ) | C.A. No. 06-463 |

### DECLARATION OF KENNETH A. PLEVAN

KENNETH A. PLEVAN, under penalty of perjury, declares as follows:

1. I am a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for defendants C. V. Starr & Co., Inc. ("C. V. Starr") and American International Marine Agency of New York, Inc. ("AIMA"). I submit this declaration in opposition to the motion of American International Group, Inc. ("AIG") for a preliminary injunction seeking to enjoin AIMA from using the name/mark it has continuously used for the past 61 years, pending receipt of regulatory approval for AIMA to conduct business under a new name, "Starr Marine."

### Background

2. Defendant C. V. Starr is a holding company formed in 1950 which, among other assets, owns four active managing general agencies ("MGAs"). One such agency is Defendant AIMA. The other three are (i) C.V. Starr & Co., (ii) Starr Technical Risks Agency, Inc., and (iii) American International Aviation Agency, Inc. ("AIAA") (now "Starr Aviation Agency, Inc.," referred to herein as "Starr Aviation").

3.  AIG's termination of AIMA is the latest and last in the series, as the other three C. V. Starr agencies received notices of termination from AIG in January and February, 2006.

### Informal Agreement Respecting the AIAA Name-Change

4.  AIAA was incorporated in 1961, i.e., six years before AIG was formed. (See Compl. ¶ 13.)

5.  Although the letter communicating AIG's termination of AIAA's MGA agreement was sent on January 26, 2006 (Ex. A), it was not until February 17, 2006 that AIG demanded that AIAA drop "American International" from its name. (Ex. B.)

6.  Following receipt of AIG's February 17, 2006 demand letter, I was asked to respond to counsel for AIG. In one of my letters to counsel, I stated AIAA's position that, accepting *arguendo* AIG's position that AIAA had an "implied license" to use its name, at a minimum AIAA was entitled to a "reasonable" period within which to change it. (Ex. C.)

7.  Counsel for the parties eventually reached an understanding that AIAA's usage would not be challenged, in exchange for AIAA's informal commitment to proceed expeditiously with its name change.

8.  The new name, Starr Aviation, was adopted in mid-May, more than 3 months after AIG's original notice of termination.

9.  Following the effectuation of the name change, AIG promptly amended its counterclaims in the New York lawsuit to challenge the use of the Starr Aviation name.

### Efforts to Resolve the AIMA Name Change Dispute

10. On Monday morning, July 31, 2006, the first business day after this lawsuit was filed, I wrote to counsel for AIG, assuring them that the AIMA name would be

changed as soon as permitted by state regulatory requirements. In the letter, I expressed my genuine surprise that AIG had not contacted me to work out a reasonable schedule, as we had done with respect to AIAA. (See Carlinsky Decl. Ex A.)

11. In my next letter (Carlinsky Decl. Ex. B), I responded to AIG counsel's unexplained assertion that the AIAA situation was different. I asked for an explanation of this position, but none was ever provided.

12. As is evident from the exchange, AIMA made a good faith effort to resolve this dispute by appropriate representations regarding a prompt transition from AIMA to the new name "Starr Marine." Whereas AIG had accepted equivalent representations in the spring of 2006, this time AIG insisted on a written settlement agreement with a "date certain."

13. The settlement discussions broke down because, as AIG well knows, the state regulatory approval process is simply too uncertain for AIMA to commit to a specific date. We ultimately concluded that AIG was only interested in a settlement that would put AIMA at risk of having to suspend its operations for a period of time, thereby giving AIG's new Global Marine unit a competitive boost.

### Distinctiveness of the AIMA Market Identity

14. In 1992 or 1993, a Special Litigation Committee of the AIG Board of Directors retained counsel and experts to prepare a report concerning the relationship between (i) AIG and its member insurance companies, and (ii) C. V. Starr and its agencies. Attached hereto as Exhibit D is a 2-page excerpt (pages 88-89) from this Report, dated August 14, 2003.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed in New York, New York on August 15, 2006.

Respectfully submitted,

_____
KENNETH A. PLEVAN

# Exhibit A

AMERICAN INTERNATIONAL GROUP, INC.
70 PINE STREET
NEW YORK, NY 10270

*Via Electronic Mail, Facsimile and Certified Mail*
*(return receipt requested)*

January 26, 2006

Mr. Steven Blakey
President
American International Aviation Agency, Inc.
1170 Peachtree Street, NE
Suite 1200
Atlanta, Georgia 30309

Re: <u>Notice of Immediate Termination of all Agency Authority</u>

Dear Mr. Blakey:

On behalf of American International Group, Inc. ("AIG") and all member insurance companies thereof -- including but not limited to, New Hampshire Insurance Company, AIU Insurance Company, American Home Assurance Company, American International South Insurance Company, American International Specialty Lines Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, Commerce and Industry Insurance Company, Granite State Insurance Company, Illinois National Insurance Co., National Union Fire Insurance Company of Louisiana, American International Pacific Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa. and The Insurance Company of the State of Pennsylvania (collectively, the "AIG Insurance Companies") -- please be advised that any authority to act as the agent of AIG or any of the AIG Insurance Companies that is vested in American International Aviation Agency, Inc. ("AIAA") or any of its employees, officers, subsidiaries, affiliates or other individuals or entities related thereto is hereby immediately terminated.

Please be further advised that any agreements between AIAA and the AIG Insurance Companies, including but not limited to, the January 1, 1979 Aviation Management Agreements between American International Aviation Agency Inc. and Granite State Insurance Company, New Hampshire Insurance Company and American Home Assurance Company, respectively, are hereby deemed void and terminated and without any force and effect.

AIG and the AIG Insurance Companies hereby demand:

- that AIAA and any related individuals or entities immediately cease and desist any marketing, servicing, underwriting, reinsurance placement, claims handling or any other activities related to any insurance policies issued by any AIG Insurance Company;

- that AIAA and any related individuals or entities immediately cease and desist from making any representations, express or implied, that AIAA represents or is authorized to

act on the behalf of AIG or the AIG Insurance Companies, either as agent or otherwise; and

- that, no later than 3:00 p.m., January 27, 2006, AIAA transfer all funds that were contained as of close of business January 25, 2006 in the Sun Trust Bank Account titled AIAA Premium Trust Acct, No. 8801670236, by wire transfer to the following bank account:

   JPM Chase, NY
   ABA #021000021
   AIG Mutual Fund
   A/c # 323 081223
   Ref: further credit to AIG Aviation-PTA sub account # M55075-2

Any funds received by AIAA in any way relating to AIG or the AIG Insurance Companies subsequent to the close of business January 25, 2006, including but not limited to insurance premiums and reinsurance recoveries must be immediately forwarded to AIG Aviation, Inc.

AIG and the AIG Insurance Companies will not honor any agreement, promise, settlement or any other undertaking that AIAA or any related individual or entity makes from this day forward regarding any policy of insurance issued by an AIG Insurance Company, any claim against any such insurance policy or any reinsurance transactions related to any such insurance policies. Please be advised that AIG and the AIG Insurance Companies will hold AIAA fully responsible for any liabilities or other consequences arising out of AIAA's actions or representations that are inconsistent with the directions set forth herein.

This notice of termination is made with full reservation of all rights of AIG and the AIG Insurance Companies.

Very truly yours,

Ralph Mincerino

cc: William Bacon
    Jonathan Schiller, Esq.

# Exhibit B

**quinn emanuel** trial lawyers | new york

335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200

WRITER'S DIRECT DIAL NO.
212/702-8185

WRITER'S INTERNET ADDRESS
robertraskopf@quinnemanuel.com

February 17, 2006

**VIA FACSIMILE, E-MAIL AND FEDERAL EXPRESS**

David Boies
BOIES, SCHILLER & FLEXNER LLP
33 Main Street
Armonk, New York 10504
Fax:(212) 466-2360
Email: dboies@bsfllp.com

John L. Gardiner
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Four Times Square
New York, New York 10036
Fax:(212) 735-2000
Email:jgardine@skadden.com

Jonathan D. Schiller
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Suite 800
Washington, DC 20015
Fax: (212) 466-2360
Email:jsciller@bdfllp.com

    Re:    *Unauthorized Use of the Designation AMERICAN INTERNATIONAL*

Dear Sirs:

    We represent American International Group, Inc. ("AIG"), world leaders in insurance and financial services. Through its extensive worldwide property-casualty and life insurance networks, AIG's subsidiaries offer a wide variety of insurance products and services in more than 130 countries around the world, including the United States. In addition, as you are no doubt aware, AIG's subsidiaries are the leading underwriter of aviation insurance based in the United States.

    To identify and distinguish AIG and the products and services its subsidiaries provide, AIG has adopted and used in commerce certain trademarks, symbols, logos, emblems, and other identifying marks. Since at least as early as 1926, AIG, through its predecessors-in-interest, has continuously used the trademark AMERICAN INTERNATIONAL in connection with its business of underwriting insurance.

quinn emanuel urquhart oliver & hedges, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-5107 FAX 858-812-3336

AIG owns numerous federal trademark registrations for the mark AMERICAN INTERNATIONAL and variations thereof, including, inter alia, United States Trademark Registration Nos. 1023912, 1661062, 1190934, 1151230, 2487923, 2376437, 2168144, 2037682, 1840829, 1872028 and 2398912. All but two of these registrations are incontestable under Section 15 of the federal trademark statute, the Lanham Act, 15 U.S.C. § 1065.

In addition, AIG has expended considerable resources in the worldwide advertisement and promotion of products and services bearing the AMERICAN INTERNATIONAL mark. As a result of the substantial use, advertisement, and promotion of these marks by AIG, AMERICAN INTERNATIONAL has become widely and favorably known to the public throughout the United States and the world as identifying AIG and the products and services its subsidiaries provide. Thus, the AMERICAN INTERNATIONAL mark is famous, engenders immense goodwill, and has strong secondary meaning denoting sponsorship and authorization by AIG.

Any designation, used commercially, that creates the impression that AIG sponsors, approves or is otherwise associated with a business venture, violates the rights of AIG, trades on the equity it has developed for its identity, and falsely suggests an association with it.

As you are undoubtedly aware, on January 26, 2006, AIG formally terminated its business relationship with your client American International Aviation Agency, Inc. ("AIAA"). As such, AIAA's continuing use of the designation AMERICAN INTERNATIONAL in connection with its business constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; causes confusion as to the origin of your goods and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilutes the distinctive quality of the AMERICAN INTERNATIONAL mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and violates state trademark, unfair-competition, dilution, and deceptive-trade-practices statutes and common law.

Accordingly, we demand that AIAA immediately cease and desist from any unauthorized use of the designation AMERICAN INTERNATIONAL. AIG vigilantly protects its trademarks and has, where necessary, brought proceedings to enforce these rights.

Please provide a written response no later than the close of business on Friday, February 24, 2006, indicating your client's compliance with the above demands. If we do not hear from you we will commence legal action seeking AIAA's profits, AIG's damages, costs associated with the action, as well as other available remedies.

We do not intend, nor should you construe, anything in this letter as a waiver or relinquishment of any right or remedy that our client may have in this matter; we hereby reserve all such rights and remedies.

Please contact me if you have any questions.

Sincerely,

Robert L. Raskopf

183335.1

# Exhibit C

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

(212) 735-3000
FAX: (212) 735-2000
http://www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(212) 735-3410
DIRECT FAX
(917) 777-3410
EMAIL ADDRESS
KPLEVAN@SKADDEN.COM

March 8, 2006

**By E-Mail**

Robert L. Raskopf, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
335 Madison Avenue, 17th Floor
New York, NY 10017

Dear Bob:

I write to follow up on the discussion today between Michael Carlinsky and my colleague John Gardiner.

As you know, American International Aviation Agency, Inc. ("AIAA") has used the AMERICAN INTERNATIONAL mark for approximately 35 years, with the full knowledge and consent of AIG. We understand that there was never a formal trademark license agreement between AIG and AIAA. Given these facts, we assume that it is AIG's position that AIAA's use of the AMERICAN INTERNATIONAL mark was under implied license from AIG.

In view of the foregoing, we believe that New York common law regarding the termination of contracts of indefinite duration affords AIAA a reasonable period of time in which to transition to a new name and mark. In this connection, I note that the Aviation Management Agreement, dated January 1, 1979, provided for a minimum termination period of 6 months. This indicates that a reasonable trademark transition period is at least 6 months.

Robert L. Raskopf, Esq.
March 8, 2006
Page 2

    Nevertheless, as John conveyed today, in an effort to resolve the dispute regarding the AMERICAN INTERNATIONAL mark, AIAA is phasing out use of the mark, and has begun the process of effectuating its name change. Because of business and other regulatory issues, it is anticipated that this process will take at least 90 more days. Accordingly, AIAA is prepared to agree to cease all use of the AMERICAN INTERNATIONAL within 90 days, or on or before June 6, 2006.

                 Sincerely,

                 Kenneth A. Plevan

cc:  Michael Carlinsky, Esq.

# Exhibit D

CONFIDENTIAL – SUBMITTED TO COURT UNDER SEAL

TEACHERS' RETIREMENT SYSTEM OF LOUISIANA V. AIDINOFF, ET AL.
C.A. NO. 20106 (DELAWARE COURT OF CHANCERY)

REPORT OF THE SPECIAL LITIGATION COMMITTEE
OF AMERICAN INTERNATIONAL GROUP, INC. ("AIG")

MARSHALL A. COHEN, O.C., Q.C

FRANK J. HOENEMEYER

IRA M. MILLSTEIN
STEPHEN A. RADIN

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

– and –

KENNETH J. NACHBAR

MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for the Special Litigation Committee of
American International Group, Inc.

August 14, 2003

C:\DOCUME~1\REPRO3\LOCALS~1\TEMP\C.DATA.NOTES\AIG REPORT_#11871##.DOC

Confidential

AIG-S 00069468

If this case is litigated, defendants certainly would argue – and may persuade the Court – that the Court should not extend the law in this fashion.

        a.    **The Starr Agencies' Niche Lines of Business and AIG's Lack of Experience in these Niche Lines of Business**

The Starr agencies operate in highly specialized niche lines of business. Over decades (during which profits were earned in some years by some Starr agencies and losses were suffered in other years by other Starr agencies), the Starr agencies and their employees – many of whom have remained with the agencies for long periods of time – have developed broker, customer and reinsurer contacts, brand reputation and name recognition, and underwriting and loss control expertise within the markets in which they operate.

Starr Marine, which has been in business since 1945 and wrote approximately $226 million in gross written premiums in 2002, writes three lines of ocean marine business in North America: (1) marine cargo (approximately 65% of its business), (2) marine hull (approximately 10% of its business); and (3) marine liability (approximately 25% of its business). Starr Marine has 96 employees located in 10 offices in the United States, 50 to 55 of whom generate and conduct Starr Marine's insurance business and have been with Starr Marine for an average of 17 years. The head of the agency, David S. French, has been with Starr Marine since 1979 and is the president of the American Institute of Marine Underwriters.

AIG's only presence in the North American ocean marine market (apart from Starr Marine) is through Lexington Insurance Company, an AIG subsidiary that insures yachts – a very different market than marine cargo, hull and liability. AIG markets and writes marine cargo insurance (and a limited amount of marine liability and hull insurance) outside of North America through AIU Marine, a division of American International Under-

Confidential    AIG-S 00069559

writers ("AIU"). AIU Marine presumably has some of the technical expertise required to underwrite and manage marine cargo business in North America, but AIU Marine has no presence, contacts or name recognition in the North American ocean marine market.

In 1997, AIG considered whether it could benefit by combining Starr Marine's business with AIU Marine's business. A memorandum prepared by Paulette J. O'Gilvie, an AIU senior business consultant, reached the following conclusions opposing any action that would compromise Starr Marine's perception in the marketplace as a "stand-alone" entity separate from AIG (emphasis added):

> AIMA [Starr Marine] has proven itself to be a financially sound and well-managed operation. The Agency has showed strong premium profits over the past three years. Its management is confident in the quality efficiency of its operations particularly the service standards implemented from the TQM exercise of 1994. These standards, so far has showed solid productivity. In addition, the inherent "separateness" from AIG coupled with its highly specialized lines of business gives the Agency a "uniqueness" in the marketplace. AIMA's business position requires it to operate with a "real separation" from AIG and consequently from NAD [North American Division]'s CSG [Customer Service Group].
>
> AIMA should remain as a "stand-alone" entity as it represents a good example of a specialized Managing General Agency operation and its business needs are different from NAD's CSG. Accordingly, a consolidation of AIMA's processes into NAD's Customer Service Groups will not add any real value to either AIMA or NAD. We therefore, recommend that AIMA remain "separate" from NAD and continue to operate in its present environment. Finally, the AIMA model is highly endorsed as a "must see" for future reviews.
>
> The following key points summarize the review and give credence to our recommendations:
>
> 1. The Agency should remain separate from AIG in order to maintain the flexibility it needs to operate in a specialized broker climate.
> 2. Brokers issue majority of the policies, which results in virtually little policy administration and preparation from AIMA's underwriters and support staff.
> 3. Business mix of AIMA is different from NAD's. To consolidate or cross-train NAD's staff would require time and incur added costs.

Confidential                                                                                           AIG-S 00089560

**CERTIFICATE OF SERVICE**

I, Edward B. Micheletti, hereby certify that on August 16, 2006, a copy of Defendants' Opposition to AIG's Motion for a Preliminary Injunction, Declaration of Kenneth A. Plevan, Declaration of Richard Shaak, Declaration of William J. Weichold, Declaration of Honora Keane, Declaration of William Eason and Declaration of Charles Capozzoli were served on the following counsel of record:

> VIA CM/ECF
> Rodger D. Smith II, Esquire
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

> /s/ Edward B. Micheletti
> Edward B. Micheletti (I.D. No. 3794)
> SKADDEN, ARPS, SLATE, MEAGHER
>   & FLOM LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware 19899-0636
> (302) 651-3000