IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-463-SLR |
| | ) | |
| C.V. STARR & CO., INC. and AMERICAN INTERNATIONAL MARINE AGENCY OF NEW YORK, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF PETER S. JARRETT

PETER S. JARRETT, being duly sworn, deposes and says:

1.     I am currently Chief Financial & Reinsurance Officer and a Senior Vice President of AIG Aviation Inc. ("AIGA"). I have been CFO for approximately six months, and a Senior Vice President for approximately two and one-half years. I have been employed by entities within American International Group, Inc. ("AIG") for 26 years.

2.     Plaintiff AIG is the parent corporation of AIGA.

3.     I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction. Except when otherwise noted, I have personal knowledge of the events and circumstances summarized below.

4.     It is my understanding that, in opposition to AIG's application for a preliminary injunction, Defendants have argued that the continued use by American International Aviation Agency, Inc. ("AIAA") of the "American International" and/or "AIAA" trademarks (the "AIG Marks") after AIAA's relationship with AIG was terminated caused no market confusion. As more specifically set forth below, those statements are not true. Notwithstanding

the specialized nature of the aviation insurance market, and the sophistication of the individuals and entities that participate in that market, I have personal knowledge of numerous instances in which AIG's aviation insurance constituents (including brokers, insureds, co-insurers and reinsurers) were confused about the relationship between AIGA and AIAA immediately prior to and after their business relationship had ceased.  In addition, I believe that AIAA's unrestricted actions during the name change period were likely to have caused AIG to suffer substantial irreparable injury to its reputation, industry goodwill and critical relationships with the retail brokers and insureds that form its customer base.

5.    Prior to January 26, 2006, AIAA had for many years served as the managing general agent for AIG and its subsidiaries (the "AIG Insurers") with broad responsibility for marketing AIG's major commercial aviation business, underwriting and binding insurance policies, collecting premiums, adjusting and paying claims and setting reserves therefor, supervising policy-related litigations and negotiating reinsurance agreements.

6.    The relationship between AIG and C.V. Starr began to break down in 2005, and AIAA began to implement a plan to raid AIGA and compete independently in the marketplace.  Among other things, while still the AIG insurers' agent, and in violation of its fiduciary duties, AIAA leased new office space, recruited AIGA employees, and made inappropriate use of AIGA's internal human resources information.

7.    Under these circumstances, on January 23, 2006, AIG sent to AIAA a cease and desist letter, forbidding AIAA from handling any claims.  After AIAA demonstrated its unwillingness to cease handling claims, AIG terminated AIAA as its managing general agent on January 26, 2006, and revoked all of AIAA's agency authority.

8.     On January 26, 2006, the AIG Insurers sent a letter of termination to AIAA. The termination letter made it clear that AIAA has absolutely no authority to act in any way on behalf of AIG or its subsidiaries or to represent, expressly or impliedly, that it is in any way affiliated with or authorized by them to act as their agent.

9.     After the separation of AIAA and the AIG Insurers, brokers, insureds, co-insurers, and reinsurers failed to distinguish properly between AIGA and AIAA, misunderstood which entity was responsible for underwriting policies and handling claims of insureds, and misdirected payments to the wrong bank accounts. Even after AIAA no longer had any authority to act on behalf of the AIG Insurers, and notwithstanding the exclusivity between the AIG Insurers and its co-insurers, co-insurers continued to transfer funds intended for AIGA into AIAA's bank account, presumably based on a misunderstanding of the distinction between AIGA and AIAA.

*Market Participants Failed to Distinguish Properly Between AIGA and AIAA and Misunderstood Which Entity was Responsible for Underwriting Policies and Handling Claims of Insureds.*

10.     As an example of a broker misunderstanding which entity may underwrite policies for insureds, on January 15, 2006, a representative of a major insurance broker wrote to William Lovett of AIGA, "Its our understanding that the airline business underwritten by AIAA out of Atlanta is now being handled by CV Starr. This would include quota share and the hull deductible lines. The question is that correct or is it reverting to AIGA?" (A copy of the broker's email correspondence is annexed hereto as Exhibit 1).[1]

11.     On January 17, 2006 the same representative again wrote to Dave Baker and William Lovett of AIGA, "*We are confused.* The deductible is written 100 pct by AIG and

---

[1]  The names of all third-party entities and individuals have been redacted from all exhibits annexed hereto.

you have a quota share line following Global. The program renews Feb 28. The comp is also written by AIG with a different ex date. *The question we still have, are we to visit with you for the renewal or will it be handled by AIAA?*" (A copy of the broker's email correspondence is annexed hereto as <u>Exhibit 2</u>).

12.    On August 21, 2006, only two days ago, a representative of a broker specializing in aviation insurance wrote to Tim Boland of AIGA, "A recent article in business aviation referred to AIGA (AIG's Aviation Agency). *Is this you* or does AIG have an actual agency?" (A copy of the broker's email correspondence is annexed hereto as <u>Exhibit 3</u>).

*Co-Insurers Misdirected Payments Intended for AIGA to AIAA's Bank Account*

13.    As an example of a co-insurer misdirecting funds into the wrong bank account, in February 2006, a co-insurer on a policy which settled a claim in the amount of $325,000, wired its portion of the claim ($258,375) to AIAA's bank account. (A copy of an email chain between the co-insurer, and Steve Peduto, a claims representative for AIGA, in which the co-insurer and AIGA attempt to reconcile the problem, is annexed hereto as <u>Exhibit 4</u>).

14.    As another example of a co-insurer misdirecting funds into the wrong bank account, on March 1, 2006, in response to an inquiry from Steven Peduto as to the wiring of settlement funds from various co-insurers, a representative of a major global insurance company who was a co-insurer on the policy at issue reported that the funds had been transferred on February 20, 2006. In fact, the funds had been transferred to AIAA's account, not that of AIGA. (A copy of the email chain, beginning with Mr. Peduto's inquiry, is annexed hereto as <u>Exhibit 5</u>).

15.     As yet another example of a co-insurer misdirecting funds into the wrong bank account, on February 20, 2006 another large insurance company acting as co-insurer on a policy misdirected $12,768.75 to AIAA's bank account, even though such funds should have been transferred into AIGA's account.  This error was not brought to AIGA's attention until the co-insurer pointed it out in an April 19, 2006 email to Steve Peduto.  (A copy of the co-insurer's email correspondence is annexed hereto as <u>Exhibit 6</u>).

16.     Following the termination, payments intended for AIGA have been misdirected to AAIA, as exemplified in paragraphs 13-15.  Based on a recent review of relevant accounting documentation, we believe that at least 21 payments in the aggregate amount of approximately $5.73 million have been misdirected to the detriment of AIGA.

I declare, on this 23rd day of August 2006, under penalty of perjury that the foregoing is true and correct.


Dated:  Atlanta, Georgia
        August 23, 2006

By: _____
                Peter S. Jarrett

60417/1942663.4                              5

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on August 23, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Edward P. Welch
> Edward B. Micheletti
> Jenness E. Parker
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

I also certify that copies were caused to be served on August 23, 2006 upon the following in the manner indicated:

### BY HAND

> Edward P. Welch
> Edward B. Micheletti
> Jenness E. Parker
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
> One Rodney Square
> Wilmington, DE  19801

### BY FEDERAL EXPRESS

> Kenneth A. Plevan
> John L. Gardiner
> Anthony J. Dreyer
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
> Four Times Square
> New York, NY  10036

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
rsmith@mnat.com

533760

# EXHIBIT 1

-----Original Message-----
From
Sent: Sunday, January 15, 2006 11:03 AM          **REDACTED**
To: Lovett, Will
Subject:

Its our understanding that the airline business underwritten by AIAA out of
Atlanta is now being handled by CV Starr. This would include the quota
share and the hull deducitble lines. The question is that correct or is it
reverting to AIGA?

PS I am on an aircraft in LA so not sure how much longer will be able to
send emails.

# EXHIBIT 2

-----Original Message-----
From:
To: Dave Baker; William Lovett
Sent: Tue Jan 17 17:41:01 2006
Subject:

**REDACTED**

I am with                    doing our renewal visit. We received your email
announcement and AIAA's announcement.

We are confused. The deductible is written 100 pct by AIG and you have a quota share line
following Global. The program renews Feb 28. The comp is also written by AIG with a
different ex date.

The question we still have, are we to visit with you for the renewal or will it be handled
by AIAA?

We are visiting Atlanta on Feb 1st.

Please advise.

1

# EXHIBIT 3

**REDACTED**

**From:**

**Sent:** Monday, August 21, 2006 10:31 AM

**To:** 'Boland, Tim'

**Subject:** AIG

Tim,

A recent article in business aviation referred to AIGA (AIG's Aviation Agency). Is this you or does AIG have an actual agency?

# EXHIBIT 4

```
-----Original Message-----
From:
To: Peduto, Steve                              REDACTED
Cc: .
Sent: 2/8/2006 6:49 AM
Subject:

Hi Steve

Please find enclosed copy of our bank report confirming full details of the transfer of
funds,  together with the FT number.  Please let me know if there is anything else we can
do to help.



Best regards
```



```
          "Peduto, Steve" <Steve.Peduto@AIG.com>

07/02/2006 18:25 GMT
```

```
To:
cc:                        REDACTED
bcc:
Subject:
```

Hi       I think we are going to be able to issue the settlement check but prior to
doing so can you send us some sort of a bank confirmation??

Thanks.

-----Original Message-----
From:
To: Peduto, Steve
Cc: Wright, Keith; Breitenbach, Mark; Alan Marsh; Alastair Mayhew
Sent: 2/3/2006 11:44 AM
Subject:


Dear Steve

Due to an administration error, our proportion of the claim equalling US$258,375.00, has
been paid to the following account, with a value date of Wednesday 1st February 2006.

```
Name of Payee        : AIAA Funds Account
Bank Name              : Suntrust Bank
Address                : 100 Colony Square
                         Atlanta, GA 30361
                         ABA : 061000104
Account Number       : 8801670236
```

Bearing in mind the current status, please advise how you wish us to proceed.

Than' and best regards




"Peduto, Steve" <Steve.Peduto@AIG.com>


01/02/2006 15:14 GMT

```
To:
cc:           "Wright, Keith" <Keith.Wright@AIG.com>, "Breitenbach,
Mark" <Mark.Breitenbach@AIG.com>
bcc:
Subject:
```


Dear Ms.

2

I am told that you may be able to assist in resolving this matter. If not I would appreciate it if you would forward this e mail on to the proper party.

This matter has now settled in the amount of $325,000, and as such we are asking that each co-insurer forward their proportionate shares, so that the settlement check can be issued (79.5% quota share of the policy limits were written through Willis).

Formal request for these funds was made by Shari Thompson in her 12/14/05 report. I will be happy to fax a copy of that correspondence to you.

Any assistance that you can provide, expeditiously, would be greatly appreciated, as we are facing payment deadlines with respect to the settlement check.

Thank you.

Steven C Peduto CPCU, Are, SCLA
AIG Aviation
Atlanta, GA
404-249-1868

## REDACTED

"Peduto, Steve" <Steve.Peduto@AIG.com>

28/02/2006 15:45

**REDACTED**

A


cc


Objet


-----Original Message-----
From: Peduto, Steve
Sent: Tuesday, February 28, 2006 9:40 AM
To:

Cc:

Subject:


Dear Co insurers,

This will serve as follow up for the settlement funds in this case. The request for funds
was made by Mr. Anthony Faiia, on 1/26/06, and as of this date we have received $24,118.75
(USD) from Willis, but we are still in need of the funds from remaining co insurers.
Kindly wire your respective funds as expeditiously as possible and provide us with
confirmation of the transmission of funds.

Thank you and best regards


Steven C. Peduto, CPCU, ARe, SCLA
Clams Representative
404-249-1868

AIG Aviation
100 Colony Square
1175 Peachtree Street NE, Suite 1000
Atlanta, GA 03061-6227
Telephone - 404-249-1800

4

# EXHIBIT 5

REDACTED

-----Original Message-----
From: Peduto, Steve
To: Breitenbach, Mark
Sent: Wed Mar 01 09:34:34 2006
Subject:


Mark,

FYI. Here is an instance where funds were sent to AIAA (funds available 2/23/06, ie after the split). Therefore there are still those that are not fully aware of the new situation.

-----Original Message-----
From: Johnston, Brannon
To: Peduto, Steve
Sent: 3/1/2006 9:08 AM
Subject:


No,
      The person that sent it will have to Contact Nancy at AIAA and get her to Send it over to us.

BRJ


-----Original Message-----
From: Peduto, Steve

1

REDACTED

Sent: Wednesday, March 01, 2006 9:07 AM
To: Johnston, Brannon
Subjec·


Will that come over to our account??

-----Original Message-----
From: Johnston, Brannon
To: Peduto, Steve
Cc: Webster, Debi
Sent: 3/1/2006 9:05 AM
Subject: I


Steve,

        That money was sent across the street to AIAA per the attachment.


Thanks, Brannon




BRJ



_____

From: Peduto, Steve
Sent: Wednesday, March 01, 2006 9:03 AM
To: Johnston, Brannon
Cc: Webster, Debi
Subject                    - ·




Brannon,


Here is confirmation of another $3972.50 in co insurer settlement funds.
Date available was 2/23/06 however I don't think you showed as received in accounting.
Possible that this was tagged to another file??

Thanks                    —




Steven C. Peduto, CPCU, ARe, SCLA

2

**REDACTED**

-----Original Message-----
From:
Sent: Wednesday, March 01, 2006 5:22 AM
To: Peduto, Steve
Subject

Dear Steve,

We refer to your below e-mail dated March 01, 2006 concerning the settlement of the clai
# L019370 & L019369.

Please find attached copy of details and copy of our order transfer sent to you on
February 20, 2006.

Trust the above is in order.

Best regards,

# EXHIBIT 6

**Johnston, Brannon**

| | |
|---|---|
| **From:** | Peduto, Steve |
| **Sent:** | Wednesday, April 19, 2006 8:40 AM |
| **To:** | |
| **Cc:** | Johnston, Brannon; Peduto, Steve |
| **Subject:** | RE: Request for reimbursment |

**REDACTED**

So noted and thank you

-----Original Message-----
From:
To: mike.toran@cvstarrco.com; nancy.larsen@cvstarrco.com
Cc: Steve.Peduto@AIG.com; :
Sent: 4/19/2006 7:15 AM
Subject: Request for reimbursment

Dear Mike,
Dear Nancy,

By February 20,2006 we transferred in error $US12,768.75 to your bank account 8801670236
with the Suntrust Bank in Atlanta (the transfer should have been directed to AIG's bank
account instead).

Please reimburse these monies to us by either cheque or transfer to our bank account
details as follows :

Looking forward to hearing from you,
Best regards

1