IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06-463-SLR |
| C.V. STARR & CO., INC. and AMERICAN | ) | |
| INTERNATIONAL MARINE AGENCY OF | ) | |
| NEW YORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AIG's ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff*
*American International Group, Inc.*

OF COUNSEL:

Jeffrey A. Conciatori
Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
(212) 849-7000

August 28, 2006

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                            ii

INTRODUCTION                                                                   1

STATEMENT OF FACTS                                                             3

    A.    Delaware Has Significant Connections With The Parties
And This Dispute                                                               3

    B.    The New York And Delaware Actions                             5

    C.    Judge Baer's Denial Of C.V. Starr's Motion To Enjoin The
Delaware Action                                                                7

ARGUMENT                                                                       8

I.    DEFENDANTS CANNOT MEET THEIR BURDEN TO
DEMONSTRATE THAT TRANSFER IS APPROPRIATE HERE                                  8

    A.    AIG's Choice Of Forum Is Entitled To Great Weight Even
Though Its Principal Office Is Located Outside Of
Delaware                                                                       9

    B.    Because The Resolution Of This Matter Will Not Require
Witnesses And Evidence, And Because All Parties And
Witnesses Are Available In Delaware, The Convenience
Factors Do Not Warrant A Transfer To New York                                 13

    C.    Judicial Economy And The Interests Of Justice Do Not
Warrant A Transfer                                                            17

CONCLUSION                                                                     21

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*Ace Capital v. Varadam Found.,*
        392 F. Supp. 2d 671 (D. Del. 2005)                                    8, 14, 19

*Argos v. Orthotec,*
        304 F. Supp. 2d 591 (D. Del. 2004)                                    9, 20

*Arrow Communication Laboratories., Inc. v. John Mezzalingua
        Assocs., Inc.,*
        C.A. No. 05-357 (SLR), 2005 WL 2786691                                13

*Bae Sys. Aircraft Controls Inc. v. Eclipse Aviation Corp.,*
        224 F.R.D. 581 (D. Del. 2004)                                         8, 15, 19

*Bergman v. Brainin,*
        512 F. Supp. 972 (D. Del. 1981)                                       8

*C.R. Bard, Inc. v. Guidant Corp.,*
        997 F. Supp. 556 (D. Del. 1998)                                       8, 11, 15

*Cent. States, SE & SW Areas Pension Fund v. Mississippi
        Warehouse Corp.,*
        No. 91 Civ. 1332, 1991 WL 211291 (N.D. Ill. Oct. 10,
        1991)                                                                 14

*Cent. States, SE & SW Areas Pension Fund v. Sansone,*
        No. 88 Civ. 1655, 1988 WL 82559 (N.D. Ill. July 29, 1988)             13

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.,*
        C.A. No 03-217 (GMS), 2003 WL 1937184 (D. Del. Apr.
        14, 2004)                                                             10

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
        893 F.2d 26 (2d Cir. 1990)                                            18

*Cont'l Cas. Co. v. Am. Home Assurance Co.,*
        61 F. Supp. 2d 128 (D. Del. 1999)                                     12

*Critikon, Inc. v. Becton Dickinson Vascular Access,*
        821 F. Supp. 962 (D. Del. 1993)                                       19

Table of Citations (cont'd)

iii.

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
  C.A. No. 01-199 (SLR), 2001 WL 1617186 (D. Del. Nov.
  28, 2001)                                                          12

*E.E.O.C. v. University of Pennsylvania*,
  850 F.2d 969 (3d Cir. 1988)                                        17

*Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm.
Corp.*,
  C.A. No. 05-898, 2005 WL 1116318 (D.N.J. May 10,
  2005)                                                              17

*Joint Stock Soc'y v. Heublein, Inc.*,
  936 F. Supp. 177 (D. Del. 1996)                                    11

*Jones Pharma, Inc. v. KV Pharma. Co.*,
  C.A. No. 03-786, 2004 WL 323109 (D. Del. Feb. 17, 2005)            12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)                                          9

*Kirschner Bros. Oil, Inc. v. Pannill*,
  697 F. Supp. 804 (D. Del. 1988)                                    12

*Minstar, Inc. v. Laborde*,
  626 F. Supp. 142 (D. Del. 1985)                                    16

*ML-Lee Acquisition Fund II, L.P.*,
  816 F. Supp. 973 (D. Del. 1993)                                    12

*Nat'l Equip. Rental Ltd. v. Fowler*,
  287 F.2d 43 (2d Cir. 1960)                                         17

*Schering Corp. v. Amgen Inc.*,
  969 F. Supp. 258 (D. Del. 1997)                                    19

*Shatterproof Glass Corp. v. Guardian Indus. Corp.*,
  C.A. No. 86-607 (CMW), 1987 WL 11773 (D. Del. May 4,
  1987)                                                              12

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970)                                       8, 10

*Stratos Lightwave, Inc., v. E20 Comm'cn, Inc.*,
  C.A. No. 01-309, 2002 WL 500920 (D. Del. Mar. 26, 2002)            10

Table of Citations (cont'd)

iv.

*Textron Innovations Inc. v. Toro Co.*,
    C.A. No. 05-486, 2005 WL 2620196 (D. Del. Oct. 14, 2005) .......... 12

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*,
    C.A. No. 04-360, 2005 WL 441077 (D. Del. Feb. 15, 2005) .......... 10

*Tsoukanelis v. Country Pure Foods, Inc.*,
    337 F. Supp. 2d 600 (D. Del. 2004) .......... 11, 12, 15, 20

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*,
    882 F. Supp. 359 (D. Del. 1994) .......... 15

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
    775 F. Supp. 759 (D. Del. 1994) .......... 10, 20

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989) .......... 11, 16

## INTRODUCTION

Plaintiff American International Group, Inc. ("AIG") respectfully submits this Answering Brief in opposition to the motion of American International Marine Agency of New York, Inc. (the "Marine Agency,") and C.V. Starr & Co., Inc. ("C.V. Starr," collectively "defendants") to transfer venue of the above-captioned action (the "Delaware Action") to the Southern District of New York, pursuant to 28 U.S.C. §1404(a).

In the face of ongoing infringement by defendants of its numerous world-famous federally-registered trademarks, AIG filed this action, and seeks appropriate interim injunctive relief. In response, defendants do not dispute AIG's rights and have represented to the Court that they will cease using AIG's trademarks. Nevertheless, defendants have sought through various strategic maneuvers to avoid having this Court grant any relief to AIG, and thereby extend their infringement indefinitely.

In response to AIG's Delaware Complaint, rather than commit in writing to cease infringing AIG's trademarks, defendants raced into the Southern District of New York, seeking an order enjoining this action, pursuant to the so-called "first filed" doctrine. The New York Court rejected that application, however, holding that the New York and Delaware matters do not have an identity of issues or parties. Having failed to convince the New York Court to enjoin the Delaware Action, defendants have introduced yet another procedural stalling tactic: a motion to transfer venue. Defendants advance contrived arguments of efficiency and judicial economy, despite the fact that it is their unfounded motion practice, and not the actions of plaintiff, which have caused a significant investment of time and resources by both the parties and the judicial system. Defendants have pursued this ill-conceived course of action even after conceding that the primary relief sought by AIG -- an order preliminarily enjoining defendants from making any

2.

unauthorized use of AIG's registered trademarks in a competing business -- is in fact warranted. Putting aside their hyper-litigious conduct, defendants have failed to meet the high burden they bear to disturb AIG's reasonable choice of forum here.

AIG's choice of Delaware as the forum in which to resolve this discrete trademark dispute is far from arbitrary. All of the parties to this action have substantial ties to the state: AIG and C.V. Starr are Delaware corporations, and the Marine Agency and its new marine insurance partner are both licensed by the state's insurance department to do business here. Additionally, two of AIG's wholly-owned subsidiaries are headquartered in Delaware, AIG employs thousands of individuals here and does a significant amount of business in Delaware annually. Although defendants' nationwide infringement would have permitted AIG to file this action in many other forums, including New York, AIG selected Delaware to minimize any unwarranted conflation of the issues in this case with a separate and distinct trademark action already well underway in New York (the "New York Action") between AIG and the Starr companies over the rights to the "Starr" trademark.

Defendants argue, based on the "first-filed" rule, that the Delaware Action must be transferred to New York. Judge Baer, the presiding judge in the New York Action, unequivocally held that the first-filed rule did not support a proposed injunction of the Delaware Action, and accordingly, defendants should be precluded from reasserting the same doctrine here in support of a transfer to New York. Moreover, defendants have failed to (and cannot) demonstrate -- as required to succeed on a motion to transfer under §1404 -- that continuing to litigate this action in Delaware will impose a substantial burden on them and their potential third-party witnesses. First, both Defendants are corporations with a national (not "regional") presence and are fully capable of litigating this dispute in this forum. Second, defendants failed

to identify with any particularity the witnesses and evidence that will be unavailable should a trial occur. In fact, in the unlikely event that this action had to be litigated on the merits, the two most likely third-party witnesses -- Berkshire Hathaway, Inc. and National Liability and Fire Insurance Company -- would be able to litigate as readily in Delaware as in New York, if not more so. Moreover, for several years, C.V. Starr has been actively defending a shareholders' derivative lawsuit in the Delaware Court of Chancery relating in part to the relationship between AIG and the C.V. Starr Agencies, including the Marine Agency. This fact alone sharply undercuts C.V. Starr's argument that it would be inconvenient to litigate in Delaware federal court. Finally, defendants completely and conveniently ignore the fact that no trial is likely to be necessary in this action, because defendants have already conceded that they will cease using the trademark that is the subject of this dispute. C.V. Starr's counsel has represented that "the only issue raised by AIG's Delaware complaint that requires resolution is the 'reasonable time period' by which C.V. Starr must effectuate the name change" (D.I. 9, Ex. F at 10). Because the issues and relief sought in this action are narrow in scope, the traditional convenience and interests of justice factors under § 1404(a), if applicable at all, surely do not compel transfer.

## STATEMENT OF FACTS

A.    Delaware Has Significant Connections With The Parties
      And This Dispute

Both AIG and defendant C.V. Starr are duly incorporated under the laws of the State of Delaware (Smith Decl. ¶ 2; D.I. 16, Ex. B). Likewise, the Marine Agency is licensed by the Delaware Insurance Department and has regularly engaged in business in this state in the

4.

past[1] (*id.* ¶ 3).  Two of AIG's wholly-owned subsidiaries maintain headquarters in Delaware and regularly do business here (Childs Decl. ¶ 3).  In 2005 alone, insurance companies within AIG's commercial property and casualty business segment generated nearly $280 million in policy premium and paid losses totaling close to $95 million in Delaware (Padron Decl. ¶ 3).  Moreover, as of July 2006, AIG's member companies had approximately 3,160 employees located in Delaware (Childs Decl. ¶ 4).

In addition, C.V. Starr is currently a defendant in a shareholder derivative lawsuit in the Delaware Court of Chancery (the "*Teachers' Litigation*") (Smith Decl. ¶ 4).  The *Teachers' Litigation* was brought in December 2002 by a retirement fund owning shares of AIG, against C.V. Starr, AIG and certain former directors of AIG and C.V. Starr, including Maurice Greenberg (*id.*).  The *Teachers' Litigation* alleges, among other things, that C.V. Starr operated as a means for Greenberg, the president of C.V. Starr and the former chairman and CEO of AIG, to compensate himself and other top AIG executives at the expense of AIG (*id.*).  The complaint further alleges that C.V. Starr and its agencies' supposedly separate operational status was a sham, allowing C.V. Starr to secure substantial payments from AIG and from reinsurers dealing with AIG, which generated extremely large compensation for C.V. Starr's stockholders (*id.*).  In June 2006, a motion by C.V. Starr, Greenberg and two other individual defendants to dismiss the complaint against them was denied, and the litigation is proceeding (*id.* & Ex. B).

The illegal and wrongful conduct that forms the basis for this action is a result of defendants' commencement of a marine insurance program for one of AIG's primary competitors, using AIG's own trademarks.  On July 21, 2006, defendants announced that they

---

[1]    C.V. Starr, a holding company, can be presumed to do no business in any state separate and independent of that conducted by its wholly-owned subsidiaries.

5.

had entered into an agreement with National Liability and Fire Insurance Company ("National Liability"), a member of the Berkshire Hathaway group of insurance companies and a direct competitor of AIG (Smith Decl., Ex. D). The Marine Agency announced this new business relationship without taking any steps to cease using the AMERICAN INTERNATIONAL marks, and prominently promoted its new program with National Liability using AIG's trademarks. The press released announced, "AIMA said that the relationship with National Liability and Fire Insurance Company will allow the agency to immediately offer $100 Million [sic] of commercial underwriting capacity to its clients" (*id.*, Ex. B). Berkshire Hathaway Inc., the ultimate parent company of National Liability, is a Delaware corporation (*id.* ¶ 7). In addition, National Liability is licensed by the State of Delaware and does business in Delaware (*id.*, Ex. E). It is, therefore, reasonable to infer that the Marine Agency's business activities as agent to National Liability, which activities are being conducted in violation of AIG's trademark rights, currently have and will in the future have a Delaware component.

### B.    The New York And Delaware Actions

C.V. Starr commenced the New York Action against AIG in March 2006, alleging trademark infringement and related claims, seeking to enjoin AIG's use of the trademark STARR in connection with its STARR EXCESS brand. In April, AIG counterclaimed, asserting its ownership of the STARR trademark and seeking to enjoin C.V. Starr from its continued use of the STARR trademark. Document production and deposition discovery in that action are ongoing, and the Court heard argument and reserved decision on C.V. Starr's Motion to Dismiss AIG's counterclaims on August 11, 2006.

In contrast, the Delaware Action arises from the use of the AMERICAN INTERNATIONAL and AIMA trademarks (both owned by AIG) by the Marine Agency (a non-

party to the New York Action) following the repudiation by the Marine Agency of its longstanding agency relationship with AIG. For more than 30 years, the Marine Agency exclusively serviced the marine insurance business of AIG and certain of its affiliated companies (the "AIG Insurers"), and as such was authorized to use AMERICAN INTERNATIONAL and AIMA in connection with its business (D.I. 10, ¶ 11). In June 2006, after learning that the Marine Agency was in negotiations to act as agent for one of AIG's direct competitors, AIG instructed the Marine Agency that it was not to use the AMERICAN INTERNATIONAL or AIMA trademarks in connection with any business dealings not undertaken for the sole benefit of AIG – hardly a novel proposition (*see id.*, ¶ 13). AIG and the Marine Agency subsequently issued mutual notices of termination of the agency relationship, effective at the end of the year (*id.*, ¶ 17). When AIG learned that the Marine Agency had prematurely entered into a managing general agency agreement with Berkshire Hathaway's National Liability, AIG again notified the Marine Agency that it was not authorized to use AIG's trademarks in connection with marketing or servicing insurance policies issued by any entity not affiliated with AIG (*id.*, ¶ 19). Remarkably, the Marine Agency flatly refused to comply with AIG's instructions given regarding the agency, and repudiated its agency agreement with and longstanding obligations to AIG (*id.*, ¶ 20). Following this, for a third time, AIG instructed the Marine Agency to cease its improper use of the AMERICAN INTERNATIONAL mark, and the Marine Agency again refused (*id.*, ¶¶ 22, 23).

The Marine Agency's steadfast refusal to comply with AIG's repeated and well-founded requests that it cease using AIG's trademarks in business with parties other than AIG gave AIG no choice but to initiate legal action against both the Marine Agency and its parent company, C.V. Starr, which was using AIG's trademarks in national marketing and advertising

for the Marine Agency (*id.*, ¶ 25, Ex. M).  The relief sought by AIG here is predominantly equitable: that Defendants cease using AIG's AMERICAN INTERNATIONAL and AIMA trademarks now that the Marine Agency is no longer acting on behalf of AIG or the AIG Insurers (D.I. 1 at 21).  Use and ownership of the STARR marks is not at issue in this action in any respect.  *See* n.7 *infra*.

In sharp contrast to its intransigent position just prior to the initiation of the Delaware Action, upon being notified of the Delaware Action, C.V. Starr promptly conceded that it would change the Marine Agency's business name to one that did not incorporate the AMERICAN INTERNATIONAL or AI trademarks (D.I. 9, ¶ 4).   In the days immediately following C.V. Starr's representation, counsel for the parties communicated actively regarding a potential resolution of the Delaware Action (*id.*, ¶¶ 5-9).

      C.     Judge Baer's Denial Of C.V. Starr's Motion To Enjoin The
              Delaware Action

In the midst of the parties' discussions to resolve the Delaware Action, C.V. Starr filed a motion in New York to enjoin AIG's prosecution of the Delaware Action (D.I. 9, ¶ 7, Ex. F).  This motion necessitated a series of letters and briefs by the parties and, ultimately, oral argument before Judge Baer.  C.V. Starr argued that, because the New York and Delaware Actions arise generally out of the business "divorce" between AIG and C.V. Starr, the "first-filed" rule should apply to enjoin the Delaware Action (D.I. 16, Ex. F).  In response, AIG invoked ample precedent that the first-filed rule applies only to virtually identical disputes, and almost always between the same parties – predicates missing here (*id.*).  Following brief oral argument on the motion, Judge Baer issued a decision denying C.V. Starr's motion and declining to apply the first-filed rule because the New York and Delaware actions are not identical

(D.I. 25).[2]  On the same day, C.V. Starr filed the instant motion, seeking to transfer the Delaware

Action to the Southern District of New York (D.I. 24).

ARGUMENT

I.    DEFENDANTS CANNOT MEET THEIR BURDEN TO
      DEMONSTRATE THAT TRANSFER IS APPROPRIATE HERE

  A court may transfer an action pursuant to 28 U.S.C. § 1404(a) if two conditions

are satisfied:  (1) the plaintiff could have brought the case initially in the proposed transferee

forum; and (2) the transfer would promote the convenience of the parties and witnesses and

would be in the interests of justice.  Because a plaintiff's choice of forum is accorded substantial

weight and venue is transferred "only if the defendant truly is regional (as opposed to national) in

character," the burden on movants is quite high – namely, that **"the balance of convenience of**

**the parties and witnesses strongly favors"** the defendant.  *Ace Capital v. Varadam Found.*, 392

F. Supp. 2d 671, 673-74 (D. Del. 2005) (emphasis added) (citing *Bergman v. Brainin,* 512 F.

Supp. 972, 973 (D. Del. 1981); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970)).

Thus, defendants "must prove that litigating in Delaware would pose a '**unique or unusual**

**burden**' on their operations" for the court to transfer venue.  *Id.* (emphasis added) (citing *C.R.*

*Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998)); *see also Bae Sys. Aircraft*

*Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581 (D. Del. 2004) (defendant did not meet

necessary burden to transfer venue where plaintiff was incorporated in Delaware and defendant

conducted business on a national scale); *Argos v. Orthotec*, 304 F. Supp. 2d 591, 597 (D. Del.

---

[2]  In correspondence with the Court, defendants attempt to rely on dictum included in this
decision concerning C.V. Starr's anticipated motion to transfer venue in the Delaware
Action (D.I. 25).  The § 1404(a) issues were not addressed in the briefing or argument
before Judge Baer and, therefore, the New York court did not have the requisite record to
make any findings on the transfer issue.

2004) (denying venue transfer of defendant incorporated in Delaware where defendant was "very likely motivated to transfer venue because it is presently involved in [a separate] [a]ction there").

No definitive list of factors must be considered when resolving a transfer motion. Rather courts may consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[3] Where, as here, there is no reason why venue would be more appropriate in the transferee district, a court must maintain the plaintiff's choice of forum.[4] *See id.*

> A.    AIG's Choice Of Forum Is Entitled To Great Weight Even Though Its Principal Office Is Located Outside Of Delaware

AIG's decision to initiate this trademark infringement action in this court – a venue to which all parties have significant connections – must be given great weight. According to the Third Circuit, a plaintiff's choice of forum should be a paramount consideration in any

---

[3]    The Third Circuit has developed an extensive list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *Jumara*, 55 F.3d at 879. The private interest factors include: (1) the plaintiffs' forum preference as manifested by the plaintiffs' original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

[4]    AIG does not at this time dispute that the Delaware Action could have been brought in New York.

transfer analysis. *See Shutte*, 431 F.2d at 25. The deference accorded to a plaintiff's selection of a particular forum must be substantial as long that forum was selected for some legitimate reason. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1994) ("it is sufficient that the forum is near the plaintiff's principal place of business and/or that it is consistent with the plaintiff's legitimate concerns"); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, C.A. No. 03-217 (GMS), 2003 WL 1937184, *3 (D. Del. Apr. 14, 2004) ("the plaintiff's rational choice of forum should not be lightly disturbed").

        Here, AIG chose to file this action in Delaware, the state of its incorporation and a state in which it employs thousands of individuals and does significant business (Padron Decl. ¶ 4; Childs Decl. ¶ 3). AIG was also motivated by the fact that C.V. Starr is incorporated here and the Marine Agency is licensed by the Delaware Insurance Department and has done business in the state in the past (D.I. 16, Ex. B; Smith Decl. Ex. A). AIG insurance companies have generated policy premium in excess of $3.6 billion in Delaware from 2001 to 2005, two of its insurance companies have headquarters in Delaware, and 3,160 of its member companies' employees are located in Delaware (Padron Decl. ¶ 4; Childs Decl. ¶¶ 3-4). These contacts are more than sufficient to defeat a transfer motion. *See Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, C.A. No. 04-360, 2005 WL 441077, *2 (D. Del. Feb. 15, 2005) (citing *Stratos Lightwave, Inc., v. E20 Comm'cn, Inc.*, C.A. No. 01-309, 2002 WL 500920, *2 (D. Del. Mar. 26, 2002) ("A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state."); *Stratos*, 2002 WL 500920, at *2 (denying transfer where plaintiff "chose to sue [defendant] in Delaware because [defendant] is incorporated in this state" ... [and] "is capable of financing litigation in Delaware").

Moreover, by choosing Delaware as the venue for the Marine Agency trademark action, AIG hoped to prompt an efficient resolution of certain discrete issues without having them become embroiled in and complicate the orderly progress of the ongoing litigation activity in the New York Action. Similarly, AIG did not want the dispute raised in the Delaware Action to cause any undue delay in the discovery schedule or hinder the resolution of pending motions in the New York Action in any way. The desire to ensure an efficient resolution of a discrete dispute is a legitimate reason to file suit in Delaware. *See, e.g., Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 603 (D. Del. 2004) (denying transfer where plaintiff, a resident of Connecticut, chose Delaware because travel there would be more convenient than to the state of defendant's principal place of business); *C.R. Bard,* 997 F. Supp. at 562 (denying transfer where plaintiff chose forum on the basis of the forum's lighter case load); *Joint Stock Soc'y v. Heublein, Inc.*, 936 F. Supp. 177, 190 (D. Del. 1996) (denying transfer where plaintiff chose forum on the basis of less congestion of dockets).

Defendants' contention that AIG's choice of forum should receive no weight because Delaware is not AIG's principal place of business is not well grounded. C.V. Starr's argument ignores the fact that a transfer movant's burden is no lighter when the plaintiff is litigating away from its home turf. "Even in a case where a plaintiff is away from its home turf, its choice of forum is entitled to deference, and should not be upset unless the defendant can 'show that the balance of convenience *strongly* favors transfer.'" *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1436 n.5 (D. Del. 1989) (quoting *Read Corp. v. Portec, Inc.*, C.A. No. 88-29 (JRR), slip op. at p. 2, 1988 WL 125128 (D. Del. Sept. 14, 1988)) (emphasis in original).

12.

       Because C.V. Starr presents no compelling reason to disturb AIG's rational and legitimate choice of forum, it must be given deference. *See Textron Innovations Inc. v. Toro Co.*, C.A. No. 05-486, 2005 WL 2620196 (D. Del. Oct. 14, 2005) (denying transfer where plaintiff was incorporated in Delaware but had its principal place of business in another state because defendant could not show how litigating in Delaware would be inconvenient); *Jones Pharma, Inc. v. KV Pharma. Co.*, C.A. No. 03-786, 2004 WL 323109 (D. Del. Feb. 17, 2005) (same); *Trilegiant*, 2005 WL 441077 (same); *Tsoukanelis*; 337 F. Supp. 2d at 603 (denying transfer where plaintiff was incorporated in Delaware but had its principal place of business in transferee district because defendant was unable to identify witnesses and documents that would be unavailable for trial in forum district); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 01-199 (SLR), 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (denying transfer where all of the parties maintained a principal place of business in the transferee district and plaintiff was incorporated in Delaware because defendant failed to demonstrate any special inconveniences of litigating in Delaware); *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993) (denying transfer where the forum district was not the plaintiff's home turf because defendants failed to demonstrate that convenience and justice weighed strongly in favor of transfer).[5]

---

[5]     C.V. Starr cites *Kirschner Brothers*, *Shatterproof*, and *Continental Casualty* for the proposition that when the plaintiff's principal place of business is not in Delaware, the burden on defendant to succeed on a motion to transfer is not as high. D.I. 14 at 12. However, the plaintiff in each of those cases did no business in Delaware and Delaware otherwise had no connection to the lawsuit. *See Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 133 (D. Del. 1999) ("the Plaintiff has not demonstrated that Delaware has any connection to the parties"); *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1988) ("The District of Delaware ... has no connection with this lawsuit."); *Shatterproof Glass Corp. v. Guardian Indus. Corp.*, C.A. No. 86-607 (CMW), 1987 WL 11773 at *1 (D. Del. May 4, 1987) ("neither party does any business [in (continued . . .)

B.    Because The Resolution Of This Matter Will Not Require
Witnesses And Evidence, And Because All Parties And
Witnesses Are Available In Delaware, The Convenience
Factors Do Not Warrant A Transfer To New York

Defendants repeatedly argue that the Delaware Action should be transferred to

New York because "potential fact witnesses," "relevant documents," and "all of the senior

executives familiar with the facts" are located in New York (D.I. 14 at 1, 6 & 7).   What

defendants ignore, however, is the undeniable fact that, due to the concessions and admissions of

defendants after the filing of the Complaint in this action, the relief sought by AIG in the

Delaware Action is quite discrete and is unlikely to require any trial.  Moreover, defendant C.V.

Starr has been proceeding for years as a litigant in the *Teachers' Litigation* in Delaware.

The procedural posture of an action is a factor in the appropriate analysis of

transfer issues under §1404(a).   Where, as here, the resolution of an action will not involve

witnesses or significant evidence, courts have found that convenience and efficiency arguments

"have little force."  *See, e.g., Resolution Trust Corp. v. Feffer*, 795 F. Supp. 1223, 1224 (D.D.C.

1992) (denying transfer because action would likely involve no witnesses or presentation of

evidence and, therefore, arguments regarding convenience and efficiency had "little force").

This is particularly so where the dispute is likely to be resolved before the trial.  *See Cent. States,*

*SE & SW Areas Pension Fund v. Sansone*, No. 88 Civ. 1655, 1988 WL 82559, at * 2 (N.D. Ill.

_____

(. . . continued)
Delaware]").  Moreover, C.V. Starr miscites *Arrow Communication Laboratories, Inc. v.*
*John Mezzalingua Assocs., Inc.*, C.A. No. 05-357 (SLR), 2005 WL 2786691, at *2.  C.V.
Starr asserts incorrectly that in that case the plaintiff was incorporated in Delaware
(D.I. 14 at 12).  In fact, the plaintiff was incorporated in New York, where the Court
transferred the case.  2005 WL 2786691 at *1.  Unlike here, where both parties are
sophisticated and conduct business internationally and nationally, in *Arrow*, both the
plaintiff and the defendant were of "regional character," conducting business in just one
city in upstate New York.  *Id.* at *4.

July 29, 1988) (denying motion to transfer because plaintiff's anticipated motion for summary judgment would be dispositive and, therefore, "the inconvenience defendant anticipates from litigation in the Northern District of Illinois will be minimal"); *Cent. States, SE & SW Areas Pension Fund v. Mississippi Warehouse Corp.*, No. 91 Civ. 1332, 1991 WL 211291 (N.D. Ill. Oct. 10, 1991) (denying motion to transfer because "[i]t is likely that cross-motions for summary judgment by the parties may be dispositive of the case. Where a party is likely to prevail on summary judgment, the convenience of witnesses in appearing at trial is not an important factor in determining venue.").

Here, the relief sought by AIG is limited and circumscribed. Following the filing of AIG's complaint, C.V. Starr promptly conceded that it would change its business name to one that did not use the AMERICAN INTERNATIONAL or AI trademarks, and implicitly conceded that it was required to do so based on AIG's registration and ownership of those marks (D.I. 9, ¶¶ 4-9, Exs. A-H). In light of C.V. Starr's representation that it will in fact change its name (and presumably cease making any unauthorized use of AIG's trademarks), the primary relief that AIG seeks in the Delaware Action is a court order requiring the discontinuation of AIG's marks, as well as certain restrictions on the Marine Agency's marketing and advertising during any court-approved transition period. A resolution of any issues remaining after injunctive relief is awarded will likely involve minimal discovery and be resolved on summary judgment without any need for trial. As such, defendants' motion should be denied.

Even if the traditional §1404(a) private convenience factors are considered by the Court, they still do not weigh in favor of transferring the Delaware Action to New York. Defendants have failed to identify particular witnesses and documents that are unavailable for trial in Delaware. *See Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671, 676 (D. Del. 2005)

(denying transfer where defendants did not "specifically indicate[] any witnesses who would be unable or unwilling to appear in Delaware, nor any documents that would be too burdensome to ship to Delaware"); *Bae Sys.*, 224 F.R.D. at 589 (denying transfer where defendant "had not identified any potential witnesses who would be unwilling or unable to appear for trial in Delaware"); *Argos*, 304 F. Supp. 2d 591 (denying transfer where defendant did not "aver[] in its briefing documents that witnesses would be unavailable for trial in Delaware.").

       This particularized showing is required due to the fact that today, most corporate litigants are in fact able to litigate conveniently in many fora, including those outside their principal place of business: "[t]he current state of technology makes it more difficult for defendants to argue that litigating in Delaware is inconvenient for the parties and witnesses." *See C.R. Bard*, 997 F. Supp. at 556 (denying transfer where defendant did not establish "that it would face any special inconvenience by litigating in Delaware"); *Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 363 (D. Del. 1994) (denying transfer and noting that this district has acknowledged that the convenience of the parties and witnesses factor in the transfer analysis is "antiquated"). Here, C.V. Starr, a holding company of four managing general agencies that underwrite and manage insurance worldwide and its agent, the Marine Agency, a company that underwrites a variety of marine insurance through ten major brokerage firms, can hardly be characterized as regional. *See Tsoukanelis*, 337 F. Supp. 2d at 603 (denying transfer where defendant conducted business outside transferee forum).

       Despite the clear requirements for establishing a basis for transfer, defendants have failed to include any specific information on witnesses and evidence that would be

unavailable should this case proceed in Delaware.[6]   In fact, in the unlikely event that the

Delaware Action proceeds to trial, it is likely that all necessary witnesses and evidence will be

available in Delaware.   At least two prominent third-party witnesses would be available to

participate in discovery and trial in Delaware.   To date, all of the Marine Agency's trademark

infringing activities are as result of its new marine insurance program with National Liability &

Fire, a Berkshire Hathaway company (Smith Decl., Ex. D).   Berkshire Hathaway is a Delaware

corporation with its principal place of business in Nebraska (Smith Decl. ¶ 7).   National Liability

is a Connecticut company, also with its principal place of business in Nebraska.   In addition,

Berkshire Hathaway was recently a defendant in an administrative action in the Court of

Chancery of the State of Delaware (Smith Decl. ¶ 8, Ex. E).   As such, C.V. Starr cannot argue

that appearing in Delaware would be any less convenient for these parties than appearing in New

York.   Moreover, C.V. Starr's and the Marine Agency's participation in the *Teachers' Litigation*

in the Delaware Court of Chancery, represented by the same counsel as here, precludes any

argument that it would be inconvenient to litigate similar issues in Delaware federal court.

(Smith Decl. ¶ 4).   Defendants' failure to provide any detail on this issue alone warrants the

denial of their motion.

---

[6]   Defendants attempt to support their position by arguing that the "convenience of counsel" would be served by transfer to New York.   It is clear, however, that the convenience of counsel is irrelevant to the merits of a transfer motion under § 1404(a).   *See Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1438 n.7 (D. Del. 1989) ("the convenience of counsel is irrelevant to the merits of a Motion to Transfer.") (citing *Solomon v. Continental Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir.1973)); *Minstar, Inc. v. Laborde*, 626 F. Supp. 142, 146 n.18 (D. Del. 1985); *Gen. Elec. v. Westinghouse Elec. Corp.*, 294 F. Supp. 36, 37 (D. Del. 1968)).   Even if it were relevant, defendants' counsel have represented defendant C.V. Starr in the *Teachers' Litigation* for an extended period, and cannot credibly argue that litigating this case will cause them any particular inconvenience.

C.    Judicial Economy And The Interests Of Justice Do Not
       Warrant A Transfer

In support of their assertion that the interests of justice favor a transfer of this action to New York, defendants put forth only one theory:  that the New York Action is "first-filed" and "stems directly from the breakup of the business relationship between AIG and C.V. Starr" (D.I. 14 at 8).  The argument that these actions fall under the first-filed doctrine has been expressly rejected by Judge Baer in his denial of C.V. Starr's motion to enjoin the Delaware Action (D.I. 25).  Having already advanced this argument once and had it squarely rejected as a matter of law, defendants should not be permitted to relitigate it.  Even assuming, however, that defendants are not estopped from relitigating this point, they have provided nothing new that might warrant a different outcome.  The New York and Delaware Actions do not involve the same issues, and simply saying that they do (as C.V. Starr unsuccessfully argued to Judge Baer) does not make it so.

The first-filed rule applies when a second-filed proceeding involves "the **same parties** and the **same issues** already before another district court." *See E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (emphasis added) ("The first-filed rule ... gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."); *Nat'l Equip. Rental Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1960) (emphasis added) ("when a case is brought in one federal district court, and the case so brought *embraces essentially the same transactions* as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." ).

Where, as here, the issues and parties involved in the two actions are not identical, courts decline to apply the first-filed rule. *See, e.g., Glaxosmithkline Consumer Healthcare, L.P.*

*v. Merix Pharm. Corp.*, No. 05 Civ. 898, 2005 WL 1116318, at *10 (D.N.J. May 10, 2005) (declining to apply first-filed rule "[b]ecause the issues in both actions do not substantially overlap, judicial resources would not be substantially conserved by hearing all claims in one forum, and the possibility of inconsistent results seems unlikely given the different issues involved"); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116-17 (2d Cir. 1992) (affirming district court's decision not to transfer action under the first-filed rule where there were "separate and distinct parties and claims embraced" by the two actions); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 29 (2d Cir. 1990) (affirming district court's decision not to enjoin second-filed action where claims in second-filed cases were not compulsory counterclaims).

The New York and Delaware Actions involve separate and distinct issues and parties. In the New York Action, C.V. Starr and two of its subsidiaries sued AIG over AIG's use and ownership of the STARR EXCESS mark. AIG promptly filed compulsory counterclaims asserting ownership rights to the STARR marks. The Marine Agency is not a party in the New York Action and there is no AMERICAN INTERNATIONAL or AI trademark at issue in the New York Action. By contrast, the principal issue in the Delaware Action is whether and how the Marine Agency should be permitted to continue its now unauthorized and thus infringing use of the AMERICAN INTERNATIONAL mark. Use and ownership of the STARR marks is not at issue in the Delaware Action.[7]

Following oral argument on C.V. Starr's motion to enjoin the Delaware Action, Judge Baer issued a decision denying C.V. Starr's motion and holding that because "the

---

[7]    In a letter to AIG, the president and CEO of the Marine Agency even emphasized that AIG's dispute with the Marine Agency is distinct: "actions of the other agencies are wholly irrelevant to the relationship between the AIG Insurers and [the Marine Agency], a separate agency" (*see* Smith Decl., Ex. F).

Delaware action does not involve parties and issues identical those to implicated by [the New York] action . . . an injunction is therefore inappropriate." D.I. 25 (citing *Computer Assocs. Int'l, Inc.*, 893 F.2d at 29 ("Since the claims presented by [defendant] in the [subsequent] action were not compulsory counterclaims to the claims in [the first] action, an injunction against the further prosecution of the [subsequent] action would have been inappropriate under the first-filed rule.")).

As discussed above, the issues in the two actions are separate and distinct, and the Delaware Action involves a defendant that is not a party to the New York Action. In addition, in light of C.V. Starr's concession that it is required to and will in fact change its name to one that does not use the AMERICAN INTERNATIONAL or AI trademarks, the primary relief that AIG will seek in the Delaware Action is likely to be limited to imposition of restrictions on the Marine Agency's marketing and advertising during any transition period.

Because the interests of justice do not favor transfer, Defendants' motion should be denied. *See Critikon, Inc. v. Becton Dickinson Vascular Access*, 821 F. Supp. 962 (D. Del. 1993) (denying transfer where "the interests of justice are equally served in this case regardless of whether the Court maintains the action in Delaware or transfers the action to Utah"); *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258 (D. Del. 1997) (denying defendant's motion to transfer to California and noting that the dispute "can hardly be described as a local California controversy").

In addition to the fact that no discernable gain in efficiency would result from transferring the Delaware Action to New York, other public interest factors favor maintaining this action in Delaware. In particular, the state has an inherent interest in litigation between companies incorporated here. *See Ace Capital*, 392 F. Supp. 2d at 676 (denying transfer and

stating that "Delaware has an interest in litigation regarding companies incorporated within its jurisdiction"); *BAE Sys.*, 224 F.R.D. at 589 (denying transfer where both parties were incorporated in Delaware "and, therefore, are citizens of Delaware").

Furthermore, the fact that C.V. Starr is incorporated in Delaware and the Marine Agency is licensed by the state's insurance department makes their objection to the prosecution of this action in this state all the more unreasonable. As stated by this Court, "[d]efendant voluntarily chose to incorporate in Delaware and avail itself of the laws of this State. As such, defendant cannot now claim that litigation in Delaware is too burdensome and warrants a transfer of venue without putting forth more than the argument that [another forum] is a more convenient forum for it." *Tsoukanelis*, 337 F. Supp. 2d at 604; *Argos*, 304 F. Supp. 2d at 598 ("Given [defendant's] choice for incorporation, the court finds that it voluntarily exposed itself to the possibility of litigation in Delaware."); *Waste Distillation*, 775 F. Supp. at 766 ("as corporate citizens of Delaware, both the corporation and its management must anticipate the possibility of being hauled into court here. . . . This Court believes that it is fair to hold a domestic corporation accountable in this district for alleged illegal activity that has resulted in harm to another domestic corporation."). Delaware's interest in the resolution of this dispute requires denial of defendants' motion.

CONCLUSION

For all of the reasons set forth above, defendants' motion to transfer venue should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  *Attorneys for Plaintiff*
  *American International Group, Inc.*

OF COUNSEL:

Jeffrey A. Conciatori
Michael B. Carlinsky
Jennifer J. Barrett
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010-1601
(212) 849-7000

August 28, 2006
534414

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on August 28, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Edward P. Welch
> Edward B. Micheletti
> Jenness E. Parker
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

I also certify that copies were caused to be served on August 28, 2006 upon the following in the manner indicated:

### BY HAND

> Edward P. Welch
> Edward B. Micheletti
> Jenness E. Parker
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
> One Rodney Square
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> Kenneth A. Plevan
> John L. Gardiner
> Anthony J. Dreyer
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
> Four Times Square
> New York, NY 10036

> */s/ Rodger D. Smith II*
> Rodger D. Smith II (#3778)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE 19801
> (302) 658-9200
> rsmith@mnat.com