**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMERICAN INTERNATIONAL GROUP, INC.,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　Plaintiff,　　　　　　　　　　　　　　　:
　　　　　　　　　　　v.　　　　　　　　　　　　　: 　Case No. 06-463 - SLR
　　　　　　　　　　　　　　　　　　　　　　　　　　:
C.V. STARR & CO., INC. and AMERICAN　　　　　:
INTERNATIONAL MARINE AGENCY OF　　　　　　　:
NEW YORK, INC.,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　Defendants.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:

**OPENING BRIEF IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000
Attorneys for Defendants

DATED:  August 28, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 4

    A.    The Parties ........................................................................................... 4

    B.    The Parties' Decades-Long Relationship and AIMA's Legal Right
        To Use the AIMA Mark ........................................................................ 4

    C.    AIG's Termination of AIMA's Role as an MGA .................................... 5

    D.    The Delaware Lawsuit .......................................................................... 6

ARGUMENT ................................................................................................................. 7

NONE OF AIG'S CLAIMS ARE LEGALLY SUFFICIENT BECAUSE AIMA
IS ENTITLED TO A REASONABLE TRANSITION PERIOD AFTER
TERMINATION OF THE IMPLIED LICENSE ............................................................ 7

    A.    Standards Applicable to a Motion to Dismiss ........................................ 7

    B.    Under the Facts Alleged by AIG, AIMA Is Entitled to Continue to
        Use Its Name for a Reasonable Period .................................................. 7

    C.    Because Delaware Law Does Not Apply Here, AIG's Delaware
        State Law Claims Should Be Dismissed .............................................. 10

        1.    Delaware's Choice-of-Law Standards ....................................... 10

        2.    Delaware Law Does Not Apply to AIG's State Law Claims .................. 12

CONCLUSION ............................................................................................................ 15

i

## TABLE OF AUTHORITIES

### CASES

A. R. Dervaes Co. v. Houdaille Industries, Inc., No. 6471, 1981 WL 7625
(Del. Ch. Sept. 29, 1981), upheld on reargument, No. 6471, 1982 WL
17883 (Del. Ch. Jan. 14, 1982) ......................................................................9

Accu Personnel, Inc. v. Accustaff, Inc., 846 F. Supp. 1191 (D. Del. 1994)......................13

Associated General Contractors of California, Inc. v. California State
Council of Carpenters, 459 U.S. 519 (1983) ..................................................7

Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc., 88 F. Supp. 2d 914
(C.D. Ill. 2000)..............................................................................................10

Chenoweth & Faulkner, Inc. v. Metropolitan Mobile CTS, Inc., No. 87
CIV. 6294, 1988 WL. 52777 (S.D.N.Y. May 18, 1988)................................9

Colony Liquor Distributors, Inc. v. Jack Daniel Distillery - Lem Motlow
Prop., Inc., 254 N.Y.S.2d 547 (App. Div. 1964) ..........................................9

Corning Inc. v. SRU Biosystems, LLC, 292 F. Supp. 2d 583 (D. Del.
2003) ........................................................................................................11, 13

In re Delmarva Securities Litigation, 794 F. Supp. 1293 (D. Del. 1992) ..........................5

Dial-a-Mattress Operating Corp. v. Mattress Madness, Inc., 847 F. Supp.
18 (E.D.N.Y. 1994).........................................................................................9

Dykes v. Southeastern Pennsylvania Transportation Authority, 68 F.3d
1564 (3d Cir. 1995).........................................................................................5

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) ..................................4

Hurley v. Columbia Casualty Co., 976 F. Supp. 268 (D. Del. 1997) ................................12

Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc.,
842 F. Supp. 693 (W.D.N.Y. 1993)...............................................................9

Kiwanis International v. Ridgewood Kiwanis Club, 806 F.2d 468 (3d Cir.
1986) ...............................................................................................................8

Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997)...............................7

Neitzke v. Williams, 490 U.S. 319 (1989)...........................................................................7

Organ v. Byron, 435 F. Supp. 2d 388 (D. Del. 2006)........................................................11

PIG Improvement Co., Inc. v. Middle States Holding Co., 943 F. Supp.
    392 (D. Del. 1996) ...........................................................................................................11

Rosati's Franchise System, Inc. v. Rosati, No. 05 C 3146, 2006 WL
    163145 (N.D. Ill. Jan. 17, 2006) ................................................................................7, 8

## STATUTES

15 U.S.C. § 1114(1) .................................................................................................................8

## MISCELLANEOUS

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair
    Competition § 18:43 (4th ed. 2006) .........................................................................8, 10

2 James W. Moore et al., Moore's Federal Practice § 12.34(2) (2006) ..............................5

2 James W. Moore et al., Moore's Federal Practice § 12.38 (2006) ...................................7

N.Y. Jur. 2d Agency § 42 (2006)...........................................................................................9

## PRELIMINARY STATEMENT

As the Court now knows, this lawsuit is the latest in a series of disputes growing out of the unwinding of the decades-long relationship between plaintiff American International Group, Inc. ("AIG") on the one hand, and defendant C. V. Starr & Co., Inc. ("C. V. Starr") and its subsidiaries – including defendant American International Marine Agency of New York, Inc. ("AIMA") – on the other. Already before the Court are (i) AIG's motion for a preliminary injunction enjoining AIMA's use of the "AIMA" name, and (ii) defendants' motion to transfer this lawsuit to the Southern District of New York where a trademark infringement lawsuit with similar issues has been pending for months. Defendants now move to dismiss the Complaint.[1]

As alleged in the Complaint, AIMA was formed in 1945 and had served as an agent for certain of AIG's member companies since at least 1975. AIMA's relationship with AIG was set forth in a December 1, 1977 management agreement between AIMA and five of AIG's insurance subsidiaries. AIG contends that AIMA's right to use "AIMA" or "American International Marine Agency" as its name is pursuant to an implied license from AIG, granted in connection with AIMA's role as an agent for the five AIG companies. Although AIMA maintains that its rights to the AIMA name date back to 1945 and are senior to AIG's rights (see Defendants' TRO Opp. Mem. at 13), for purposes of this motion to dismiss, defendants accept as true (as they must) AIG's

---

[1]    In light of the two motions scheduled to be argued on August 30, 2006, defendants sought AIG's agreement to extend by 30 days their time to respond to the Complaint. AIG, however, refused to agree to more than a one-week extension.

allegation that AIMA used the mark for 60 years pursuant to an implied license from AIG or its predecessors.

Effective as of July 25, 2006, the agency relationship ended. Three days later, under the theory that AIMA's contractual right to use AIMA as its name ended immediately with the termination of the management agreement, AIG brought the instant lawsuit, asserting eight separate federal and Delaware law claims of trademark infringement, dilution, and unfair competition. As shown more fully below, each of AIG's claims is legally insufficient and should be dismissed.

Under common law contract principles, AIG must provide AIMA with a reasonable period to cease its use of the AIMA name if such use was pursuant to an implied license. Indeed, AIG has all but conceded – both in its own Complaint and in its reply brief filed in connection with its motion for a preliminary injunction – that AIMA is entitled to a reasonable period to change its name. (See Compl. ¶ 52 (noting "reasonable post-termination treatment" of another C. V. Starr subsidiary); Reply Br. at 5 ("the only issue here is the 'reasonable time period' in which defendants must effectuate a name change").) Although the question of what is a "reasonable" period for AIMA to change its name is not before the Court on this motion, because AIMA is entitled to the transition period, AIG's claims – all of which challenge any continued use by AIMA of the AIMA mark following termination – should be dismissed.

In addition, each of AIG's five Delaware state law claims should be dismissed on separate grounds, because the facts as alleged by AIG make clear that

2

Delaware law should not apply here.  The applicable choice-of-law factors weigh heavily in favor of New York, not Delaware, law:

- AIG has failed to allege that defendants have engaged in any actionable conduct within the State of Delaware;

- All of the parties are headquartered in New York;

- AIMA, the principal user of the AIMA mark, is a New York corporation;

- The parties' business dealings, including those giving rise to the termination of AIMA's implied license, all occurred in New York; and

- Four of the six parties to the management agreement – the predicate on which, AIG alleges, AIMA was given several decades ago an implied license to use the AIMA mark – are New York companies, and the other two are Pennsylvania companies.

Indeed, aside from the fact that AIG and C. V. Starr are incorporated in Delaware – a factor courts have found unpersuasive where the parties are headquartered in another state and have had their principal dealings in that other state – the lawsuit has no nexus whatsoever to the State of Delaware.  For this reason, Delaware law should not apply to this lawsuit, and AIG's Delaware state law claims should all be dismissed.

3

## STATEMENT OF FACTS[2]

### A.    The Parties

Formed in 1967, plaintiff AIG is a Delaware corporation with its principal place of business in New York. (Compl. ¶¶ 2, 14.) Defendant C. V. Starr is a Delaware corporation with its principal place of business also in New York. (Id. ¶ 3.) Defendant AIMA was formed in 1945, and is a wholly-owned subsidiary of C. V. Starr. (Id. ¶¶ 4, 23.) AIMA is headquartered in New York City and is incorporated under New York law. (Id. ¶ 23.)

### B.    The Parties' Decades-Long Relationship and AIMA's Legal Right To Use the AIMA Mark

In addition to AIMA, C. V. Starr owns several other insurance agencies. (Id.) The relationship between AIG and C. V. Starr's agencies dates back to AIG's formation in the late 1960s. (Id. ¶ 24.) From at least 1975 until July 25, 2006, AIMA served as a managing general agent ("MGA") to AIG and certain of its member companies (the "AIG Insurers"). (Id. ¶ 25.) In that capacity, AIMA had responsibility for marketing the AIG North American major commercial-marine-insurance business, underwriting and binding insurance policies; collecting premiums; and assisting in negotiating reinsurance agreements. (Id.)

---

[2]    For purposes of this motion, the facts as pled in the complaint must be accepted as true. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50 (1989). Therefore, in setting forth the statement of facts, defendants largely recite the pertinent allegations in the Complaint. As noted, however, as set forth more fully in their Opposition to AIG's Motion for a Preliminary Injunction (and the supporting Declarations), defendants dispute AIG's claim that it has senior rights to the AIMA mark.

The nature and terms of AIMA's MGA relationship with AIG is set forth in a December 1, 1977 MGA Agreement between AIMA and five of AIG's insurance subsidiaries: National Union Fire Insurance Company, Birmingham Fire Insurance Company, American Home Assurance Company, Commerce and Industry Insurance Company, and AIU Insurance Company. (See MGA Agreement, Micheletti Aff. Ex. A.)[3] All of the parties to the MGA Agreement are headquartered and/or incorporated in New York, with the exception of National Union and Birmingham Fire, both of which are Pennsylvania corporations. (See AIG 2005 10-K Statement excerpt, Micheletti Aff. Ex. B.)

The MGA Agreement does not expressly address trademark ownership or rights, although AIMA entered into the agreement under its own name. (See Micheletti Aff. Ex. A.) Rather, AIG contends that AIMA used the AIMA and AMERICAN INTERNATIONAL MARINE AGENCY marks pursuant to an implied license from AIG in connection with its role as an agent for the AIG member companies. (Compl. ¶ 30.)

## C.    AIG's Termination of AIMA's Role as an MGA

On June 29, 2006, AIG provided notice of termination of AIMA as the MGA of AIG's member insurance companies, effective December 31, 2006. (Id. ¶ 40.) On the following day, June 30, 2006, AIMA gave notice of its intent to terminate the

---

[3]    In deciding a motion to dismiss, the Court may consider documents that are relied upon in, but not attached to, the complaint, as well as matters of public record. Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1566 n.3 (3d Cir. 1995) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993)); In re Delmarva Sec. Litig., 794 F. Supp. 1293, 1299 (D. Del. 1992); 2 James W. Moore et al., Moore's Federal Practice § 12.34(2) (2006).

agency agreement between the parties, effective January 1, 2007. (<u>Id.</u> ¶ 41.) Disputes led

to the termination of the agency relationship on July 25, 2006. (<u>Id.</u> ¶ 47.)

**D.    The Delaware Lawsuit**

On July 28, 2006, three days after it sent AIMA the "immediate"

termination notice, AIG filed the instant lawsuit against C. V. Starr and AIMA, seeking

(i) to enjoin AIMA's use of the designation AMERICAN INTERNATIONAL MARINE

AGENCY and the abbreviation AIMA (the "Delaware Lawsuit"), and (ii) compensatory

and punitive damages and other relief. (<u>See</u> Compl. ¶ 1.)

AIG's complaint alleges eight separate causes of action against C. V. Starr

and AIMA, including five separate claims under Delaware law: (1) federal trademark

infringement; (2) federal unfair competition; (3) federal dilution and Delaware common

law dilution; (4) false advertising under section 2532(a)(5) of the Delaware Deceptive

Trade Practices Act; (5) Delaware common law trademark infringement; (6) deceptive

trade practices under section 2532(a)(1) of the Delaware Deceptive Trade Practices Act;

(7) Delaware common law unfair competition; and (8) Delaware common law false

designation of origin. As noted, it is AIG's position that any use by AIMA of its name

after July 25, 2006 is a violation of AIG's rights. (<u>E.g.</u>, <u>id.</u> ¶ 49.)

6

## ARGUMENT

### NONE OF AIG'S CLAIMS ARE LEGALLY SUFFICIENT BECAUSE AIMA IS ENTITLED TO A REASONABLE TRANSITION PERIOD AFTER TERMINATION OF THE IMPLIED LICENSE

**A.    Standards Applicable to a Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court should dismiss a complaint that fails to state a claim upon which relief can be granted. Dismissing a claim on the basis of dispositive issues of law "streamlines litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). While this Court must accept as true factual allegations in the Complaint, it "need not credit [the] complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); see also 2 James W. Moore et al., Moore's Federal Practice § 12.38 (2006). Moreover, "[i]t is not . . . proper to assume that the [plaintiff] can prove [any] facts that it has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

**B.    Under the Facts Alleged by AIG, AIMA Is Entitled to Continue to Use Its Name for a Reasonable Period**

The premise of each cause of action asserted by AIG is that AIMA has no legal right to continue to use AIMA as its name following termination of the MGA Agreement. (See, e.g., Compl. ¶ 27.) Of course, where a defendant has the legal right to use the mark at issue, it is an absolute defense to plaintiff's claim for trademark infringement, dilution, or related state law claims. See Rosati's Franchise Sys., Inc. v. Rosati, No. 05 C 3146, 2006 WL 163145, at *5, *9 (N.D. Ill. Jan. 17, 2006) (Ex. A)

7

(dismissing claims for trademark infringement, trademark dilution, and cybersquatting, as well as state law dilution and breach of contract claims, and noting that authorized use of a trademark via a license is a defense to such claims); see also 15 U.S.C. § 1114(1) (showing of trademark infringement requires use of mark "without the consent of the registrant" (emphasis added)).

Here, AIG contends that AIMA's use of "AIMA" and "American International Marine Agency" as its name was under implied license from AIG. (Compl. ¶ 30.) AIG further contends that AIMA's right to use "AIMA" ceased as soon as AIG sent its "immediate" termination notice on July 25, 2006. (Id. ¶ 27.) As set forth below, under AIG's own theory of AIMA's rights to the name AIMA, the law is clear that AIMA is entitled to a reasonable time period to continue to use the name. Here, defendants believe that a reasonable period is five-six months, but that is not an issue before the Court on this Motion.

As a general matter, trademark license contract disputes are governed by the general rules of contract interpretation. See 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:43, at 18-69 to 18-73 (4th ed. 2006); see also Rosati's Franchise Sys., 2006 WL 163145, at *5 (Ex. A) (applying principles of contract interpretation in holding that defendant-licensees were not infringing plaintiffs' trademark). As the Third Circuit has pointed out: "A trademark licensing agreement is a contract to be interpreted and enforced under state law." Kiwanis Int'l v. Ridgewood Kiwanis Club, 806 F.2d 468, 472 n.8 (3d Cir. 1986).

8

New York law is clear that "reasonable notice" must be given in order to terminate a contract of indefinite duration. See, e.g., 2A N.Y. Jur. 2d Agency § 42 (2006) ("Where there is no provision [in an agency agreement] as to termination, the contract may be terminated after giving reasonable notice."); Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc., 842 F. Supp. 693, 699 (W.D.N.Y. 1993) ("Even if no definite period of termination is originally fixed in the contract, such a contract is not terminable at will by either party, but only upon reasonable notice."); Chenoweth & Faulkner, Inc. v. Metro Mobile CTS, Inc., No. 87 CIV. 6294, 1988 WL 52777, at *2 (S.D.N.Y. May 18, 1988) (Ex. B) ("In the absence of an express provision, a contract is terminable after a reasonable duration with reasonable notice.").[4]  In determining what type of notice is reasonable, the courts have looked to the individual circumstances of the case at hand. See Chenoweth, 1988 WL 52777, at *3; Colony Liquor Distribs., Inc. v. Jack Daniel Distillery – Lem Motlow Prop., Inc., 254 N.Y.S.2d 547, 549-50 (App. Div. 1964) (modifying trial court order and granting defendant nearly a full year to unwind distributor agreement given parties' twelve-year relationship).

       In light of the foregoing, AIG can only terminate the implied trademark license to use the name AIMA upon reasonable notice. See Dial-a-Mattress Operating Corp. v. Mattress Madness, Inc., 847 F. Supp. 18, 20 n.1 (E.D.N.Y. 1994) (holding that

---

[4]    Although (as discussed more fully below) New York law would govern the alleged implied license, given that all parties are headquartered in New York, and four of the six parties to the MGA Agreement are New York corporations, Delaware law would require the same result. See, e.g., A. R. Dervaes Co. v. Houdaille Indus., Inc., No. 6471, 1981 WL 7625, at *5 (Del. Ch. Sept. 29, 1981) ("[C]ontracts which are silent as to termination are terminable at will by either party . . . upon reasonable notice.") (Ex. C), upheld on reargument, No. 6471, 1982 WL 17883 (Del. Ch. Jan. 14, 1982).

termination of an agreement conferring a license to use a trademark for an indefinite time requires reasonable advance notice); Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc., 88 F. Supp. 2d 914, 921 (C.D. Ill. 2000) (stating that a "license with indefinite term may be terminated at will with reasonable notice"); 2 McCarthy, supra, § 18:43, at 18-71 ("The term of the license should be specifically stated in the license because the law of some states provides that a license without a stated term is terminable at the will of either party upon reasonable notice.").

As noted, the length of the reasonable period is not at issue. What is at issue is the legal sufficiency of allegations that do not allow for any such transition period at all. In light of AIMA's legal right to continue to use the AIMA mark for a reasonable period, all of AIG's claims should be dismissed.

## C.    Because Delaware Law Does Not Apply Here, AIG's Delaware State Law Claims Should Be Dismissed

As noted, AIG's complaint alleges five state law claims under Delaware law. As set forth below, all of AIG's state law claims should be dismissed because, under Delaware's choice-of-law analysis, New York, rather than Delaware, law applies to these claims, all of which involve the use by a New York corporation (AIMA) of a mark purportedly owned by a company headquartered in New York (AIG), which use allegedly arises out of an agreement between mostly New York parties.

### 1.    Delaware's Choice-of-Law Standards

Delaware courts apply the "most significant relationship" test, as embodied in the Restatement (Second) of Conflict of Laws, to both tort and contract

claims.[5] PIG Improvement Co., Inc. v. Middle States Holding Co., 943 F. Supp. 392, 396

(D. Del. 1996).  For claims sounding in tort, Delaware courts apply the principles set

forth in Restatement (Second) of Conflict of Laws sections 6 and 288, including "'the

relevant policies of other interested states and the relative interest of those states in the

determination of the particular issue.'"  Organ v. Byron, 435 F. Supp. 2d 388, 392 (D.

Del. 2006) (citation omitted).[6]  Pursuant to the Second Restatement, Delaware courts

consider the following factors in determining choice of law with respect to tort claims:  (i)

the place where the conduct causing the injury occurred; (ii) the place where the injury

occurred; (iii) the place of incorporation and principal place of business of parties; and (iv)

the place where the parties' relationship is centered.  Corning Inc. v. SRU Biosystems,

LLC, 292 F. Supp. 2d 583, 585 (D. Del. 2003) (citing Travelers Indem. Co. v. Lake, 594

A.2d 38, 47 (Del. 1991) and Restatement (Second) of Conflict of Laws § 145 (1971)).

    For contract claims, Delaware courts determine the state with which the

parties have the most significant relationship by considering the following factors:  (i) the

place of contracting and/or where the contract was negotiated; (ii) the place of

performance of the contract; (iii) the location of the subject matter of the contract; and (iv)

---

[5]    Although AIG's claims arguably sound in tort rather than contract, because AIG has
alleged that its claims and AIMA's right to use its name arise out of an implied
contractual relationship with AIMA (see Compl. ¶ 25), the choice-of-law standards
applied to both tort and contract claims are discussed.

[6]    In determining which jurisdiction's law to apply to a tort claim Delaware courts will
also consider "'the public policy of the jurisdiction in which the actions of the
[tortfeasor] cause harm.'"  Organ, 435 F. Supp. 2d at 392 (alteration in original)
(quoting Playtex Family Prods., Inc. v. St. Paul Surplus Lines Ins. Co., 564 A.2d 681,
689 (Del. Super. Ct. 1989)).  Of course, AIG has certainly not alleged that any harm
is felt in – let alone localized to – Delaware.

the domicile, residence, or place of incorporation and place of business of the parties.

See Hurley v. Columbia Cas. Co., 976 F. Supp. 268, 272 (D. Del. 1997) (citing Naghiu v.

Inter-Continental Hotels Group, Inc., 165 F.R.D. 413, 420 (D. Del. 1996) and

Restatement (Second) of Conflict of Laws § 188 (1971)).

### 2.    Delaware Law Does Not Apply to AIG's State Law Claims

Under Delaware's clearly articulated choice-of-law standards, Delaware

law does not govern the state law causes of action alleged by AIG, regardless of whether

they sound in tort or contract.

Turning to the first "tort" choice-of-law factor (the place of the harm),

there is nothing to suggest, nor has AIG even alleged, that the purported injury from

AIMA's continued use of its name would be felt in Delaware, let alone most strongly felt

in Delaware.  In fact, aside from asserting the undisputed fact that two of the parties are

incorporated in Delaware, the only other connection with Delaware alleged in the

Complaint is that "[a]mong its numerous contacts with the State of Delaware, [AIMA]

holds a valid producer license from the Delaware Insurance Department, and on

information and belief regularly transacts and solicits business in Delaware."  (Compl. ¶

7 (emphasis added).)  While such an allegation is sufficient to support this Court's

exercise of personal jurisdiction over AIMA, it is manifestly inadequate support for the

proposition that Delaware law should apply to the claims asserted herein.

Likewise, the second factor (place of conduct) weighs heavily in favor of

the application of New York law, given that AIG's own Complaint contends that AIMA's

alleged tortious conduct has taken place predominantly – if not exclusively – in New

York. (See, e.g., id. ¶¶ 36-48 and Ex. B.) This is far from surprising, given that AIMA's business activities are centered in New York, where it is headquartered. (See id. ¶ 4.) As to the third factor (place of business), although both parties are incorporated in Delaware, as AIG itself concedes the parties' principal places of business are in New York, where their principals and corporate headquarters are located. (Id. ¶¶ 2-4.) As this Court has recently observed, the parties' respective domiciles are "not persuasive," especially when the parties' relationship is centered in another state. Corning, 292 F. Supp. 2d at 585 n.1; see also Accu Pers., Inc. v. Accustaff, Inc., 846 F. Supp. 1191, 1212 (D. Del. 1994) (applying Delaware law in service mark infringement and unfair competition case because the parties' relationship was "centered around" an office in Delaware, despite the fact that both parties were incorporated elsewhere).

Fourth, and most significantly, the parties' relationship (the fourth factor) is centered in New York, as evidenced by the MGA Agreement and the recent correspondence between the parties discussed in AIG's Complaint. (See Compl. ¶¶ 36-48 (exchange of correspondence).) These letters were all exchanged in New York, and the AIMA press release attached as Exhibit B to AIG's Complaint was sent from New York. (See Decl. of Ralph Mucerino, dated Aug. 7, 2006, Exs. A-J, L.) Indeed, as AIG itself has observed, until very recently, AIMA and AIG were "headquartered under the same roof" in New York City. (Compl. ¶ 32.)

In sum, there can be little doubt that New York, not Delaware, has the most significant interest in the dispute between AIMA and AIG. Accordingly, New York law should apply, and all of AIG's Delaware state law claims should be dismissed.

13

The result would be no different if the choice-of-law question were analyzed under the contract choice-of-law factors, which also weigh heavily in favor of the application of New York, rather than Delaware, law. First, four of the six parties to the MGA Agreement are headquartered in New York; neither of the other two are Delaware companies. Second, the place of contractual performance unquestionably was New York, where AIMA is headquartered. Indeed, the MGA Agreement explicitly required AIMA to "maintain an office in New York, N.Y., competent to receive, summarize and adjust all acts or transactions with the Companies" and adds that AIMA's "records shall be available to the Companies" (presumably at AIMA's New York office). (MGA Agreement at 2, Micheletti Aff. Ex. A.)

As to the third factor (the location of the contract's subject matter), because the "subject matter" of the MGA Agreement is the provision of underwriting services, as set forth on the first page of the MGA Agreement, it is fair to conclude that the "subject matter" was at least concentrated in and directed from AIMA's New York headquarters. Finally, the fourth factor weighs in favor of the application of New York law. Of the six signatories of the MGA Agreement, four (AIMA, American Home Assurance Company, Commerce and Industry Insurance Company, and AIU Insurance Company) were New York companies, and two (National Union Fire Insurance Company and Birmingham Fire Insurance Company) were Pennsylvania companies. (See AIG 2005 10-K, Micheletti Aff. Ex. B.) Thus, the signatories' only connection to Delaware is that it is the state of AIG's incorporation – a factor that, as noted above, is "not

persuasive" in light of the other factors weighing so heavily in favor of the application of

New York law.

## CONCLUSION

For the reasons set forth above, this Court should grant Defendants'

motion to dismiss.

> _____/s/ Edward B. Micheletti\_\_\_\_
> Edward P. Welch (I.D. No. 671)
> Edward B. Micheletti (I.D. No. 3794)
> Jenness E. Parker (I.D. No. 4659)
> SKADDEN, ARPS, SLATE,
>   MEAGHER & FLOM LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, Delaware  19899-0636
> (302) 651-3000
> Attorneys for Defendants

OF COUNSEL:
Kenneth A. Plevan
John L. Gardiner
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036-6522
(212) 735-3000

DATED:  August 28, 2006

## CERTIFICATE OF SERVICE

I, Edward B. Micheletti, hereby certify that on August 28, 2006, a copy of the

Opening Brief in Support of Defendants' Motion to Dismiss and the Transmittal Affidavit of

Edward B. Micheletti to Defendants' Opening Brief in Support of Their Motion to Dismiss were

served on the following counsel of record:

VIA CM/ECF

Rodger D. Smith II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

/s/ Edward B. Micheletti
Edward B. Micheletti (I.D. No. 3794)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000